Woolworth Victor DAVIS, Jr., Plaintiff,

and

Salvatore D'Elia and Herbert Sims, Jr., Intervening Plaintiffs,

v.

George BUCHER, Leonard Ettinger and Reverend Harrison Trapp, in their Individual capacities as members of the Civil Service Commission of the City of Philadelphia, John M. Lawlor, in his Individual and official capacity as Director, Municipal Medical Dispensary, the City of Philadelphia, John Doe and Mary Roe, as agents and employees of the above named officials, Frank L. Rizzo, in his Individual and official capacity as Mayor of the City of Philadelphia, Hillel Levinson, in his Individual and official capacity as Managing Director of the City of Philadelphia, Joseph R. Rizzo, in his Individual and official capacity as Fire Commissioner of the City of Philadelphia, and the City of Philadelphia, as the corporate employer of all City personnel.

Civ. A. No. 77–932.

United States District Court,
E. D. Pennsylvania.

May 31, 1978.

Jack J. Levine, Philadelphia, Pa., for plaintiff Davis.

Community Legal Services, H. David Kraut, Richard Perna, Rita L. Bernstein, Philadelphia, Pa., for plaintiffs D'Elia and Sims.

Julian C. Wessel, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

CAHN, District Judge.

Plaintiffs have brought this action on behalf of themselves and others similarly situated to challenge the hiring practices of the City of Philadelphia (hereinafter "City") regarding job applicants with prior histories of drug abuse. The named plaintiffs, Woolworth Davis, Salvatore D'Elia, and Herbert Sims Jr., claim they were denied employment solely on the basis of former drug use, without regard to their qualifications, present rehabilitative status or the nature of the job for which they had applied. Defendants are various City officials entrusted with the authority to develop and implement employment practices.

Plaintiffs allege that the hiring policy of the City of Philadelphia unlawfully discriminates against former drug abusers in violation of the Equal Protection Clause and the Due Process Clause of the United States Constitution. The plaintiffs also allege violations of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Plaintiffs have moved for summary judgment and class certification. The City has not opposed the class certification motion but has contested the merits of plaintiffs' legal claims. After careful consideration of the contentions of the parties and an independent review of the appropriateness of class certification, I grant both motions.

## FACTS

Since this is a summary judgment motion, I base my decision on undisputed facts and view these facts in the light most favorable to the party opposing the motion. The affidavits, depositions, and documentary evidence establish the following facts.

At various times, plaintiffs filed job applications with the City of Philadelphia. Plaintiff Davis reported for a medical examination on January 27, 1977, at the Municipal Medical Dispensary after having been notified by the City that he had been selected for the next class of firemen. (Davis Affidavit, Par. 5–7). During the examination the physician noticed a scar. Davis explained that during a four month period in 1972 he had used nonnarcotic amphetamines injected intravenously, but that he had not engaged in drug use since that time. The doctor agreed that the scar was old. (Davis Affidavit, Par. 3, 8). Nevertheless, plaintiff was told that he could not be employed in any city job because the City would not hire anyone with a past drug history. It is undisputed that but for the scar on plaintiff's forearm and his admission of prior drug use, plaintiff Davis would have been hired as a fireman with the Philadelphia Fire Department. (Davis Affidavit, Par. 10, 11).

Salvatore D'Elia is a former narcotics addict who has been enrolled in a methadone program. (D'Elia Affidavit, Par. 2). Random urine samples required by federal law showed that he was using no drugs other than methadone. (D'Elia Affidavit, Par. 8). D'Elia applied for a position with the City of Philadelphia under Title II of the Comprehensive Employment and Training Act (CETA), 29 U.S.C. § 841, et seq. (D'Elia Affidavit, Par. 10). He was referred for employment to both the Museum of Art as a security guard and the Philadelphia Civic Center as a laborer. On both occasions he was denied employment because of his history of drug use. (D'Elia Affidavit, Par. 11–12). Next he was referred for a job as a physical property maintenance worker. He was accepted for employment and sent to the dispensary for a medical examination. At this time he was again rejected because of his former drug use. (D'Elia Affidavit, Par. 15). Thus, on three separate occasions he was refused employment solely on the basis of his drug history.[1]

Plaintiff Herbert Sims is a former user of morphine and heroin. He took these drugs near the end of his two year tour of duty with the armed services. (Sims Affidavit, Par. 2). He has been totally drug free since 1975. (Sims Affidavit, Par. 3–4). Sims was accepted for employment by the Department of Streets subject to his passing a medical examination. (Sims Affidavit, Par. 7–8). At the examination, plaintiff was told that pursuant to city personnel policy he was rejected for employment because of his admitted former drug abuse. (Sims Affidavit, Par. 9).

The facts, as demonstrated by the undisputed affidavits, show that Davis, D'Elia, and Sims are rehabilitated. They were all fully qualified for the positions for which they applied. At oral argument, counsel for the defense stipulated that but for the old scars and admissions of prior drug use the applicants would have been hired by the City of Philadelphia.[2]

## DISCUSSION

I. THE SUMMARY JUDGMENT MOTION

A. THE CITY'S POLICY REGARDING EMPLOYMENT OF SUBSTANCE ABUSERS

The City's policy concerning employment of narcotic substance abusers has been in-

1. In early November, 1977, plaintiff was sent by the CETA office for an interview by the Department of Streets. Plaintiff was hired as a physical property maintenance worker and was sent for another physical examination. He passed the examination and the examining physician made no mention of his prior drug use.

2. Three other persons who are not party to this litigation except as potential class members submitted affidavits establishing that they too were denied employment solely because of their prior drug use. Counsel for the City has not contested that this was the basis for their denial of employment.

terpreted by the medical dispensary staff (Lawlor Deposition at pp. 10, 13–20, 17–19) to include past or present drug use, abuse, or addiction. According to the City, the policy is grounded in the City Civil Service Regulations 8.0233:

> The Director may refuse to examine an applicant or may- disqualify a candidate at any time prior to appointment either during or after an examination . . . who is addicted to the intemperate use of intoxicating liquors, or the use of harmful drugs, . . .

and 10.0910:

> The name of an eligible shall be removed from an eligible list for any of the following reasons: . . . Addiction to the intemperate use of intoxicating liquors or to the use of harmful drugs.

and in Section XIV of "Procedures & Policies Regarding Medical Examination":

> Generally, emotional instability, immaturity, psychosis, alcoholism, or drug addiction, are disqualifying for all positions.

The medical examination through which this policy is enforced is the last stage in the process of screening job applicants. The purpose of the medical examination is to determine whether a job applicant is medically qualified for the position for which he has applied. (Lawlor Deposition at p. 7). Counsel for the City has represented that the medical examiners have the discretion to overlook past drug use as a disqualifying characteristic for city employment. Counsel stipulates, however, that this discretion was not exercised with respect to the plaintiffs and the three nonparty affiants in the instant case and that an absolute bar to employment due to former drug use was imposed. In excluding plaintiffs from employment because of past drug use, the medical dispensary staff did not consider whether such a history of substance abuse medically disqualified a person from performing a particular job. At least with respect to the named plaintiffs and the three nonparty affiants, the effect of the City's policy was that, once it was revealed

a prospective employee formerly used drugs, he would not be employed.

## B. DEFENDANT'S POLICY IS VIOLATIVE OF § 504 OF THE REHABILITATION ACT, 1973, 29 U.S.C. § 794

Plaintiffs claim that former drug addicts fall within the protection of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (hereinafter "Act") and that the Act provides them with a remedy for the discrimination alleged here. Section 504 of the Act provides in pertinent part:

> No otherwise qualified handicapped individual in the United States, . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794. The City contends that Congress did not intend drug addicts to be included within the definition of handicapped for purposes of § 504. However, although there are no cases on point, I am persuaded that the clear words of the statute do encompass drug addiction.

29 U.S.C. § 706(6) defines a handicapped individual as:

> [A]ny person . . . who (a) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (b) has a record of such impairment, or (c) is regarded as having such an impairment.

It is undisputed that drug addiction substantially affects an addict's ability to perform major life activities, defined by Department of Health, Education and Welfare regulations supplementing the Act, 42 Fed. Reg. 22686 *et seq.* (May 4, 1977) (hereinafter "the Regulations") as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Regulations § 84.-2(j)(2)(ii). Furthermore, prior addiction and drug use clearly fall within the definition of having a "record of such impairment," 29

U.S.C. § 706(6)(C), as defined in § 84.-2(j)(2)(iii) of the Regulations.[3]

Counsel for the City might reasonably have argued, absent any indication to the contrary, that Congress must have intended to differentiate drug use from other physical and mental handicaps because (1) it is a handicap voluntarily created by the handicapped person; and (2) drug possession and use are generally illegal and Congress could not have wished to compensate users for criminal activity. This argument, however, loses all force in view of the Department of Health, Education and Welfare analysis of the Act accompanying the Regulations. The analysis, at 42 Fed.Reg. 22686 (May 4, 1977) directly addresses and disposes of the issue of whether drug addicts are encompassed by the Act.

The Secretary has carefully examined the issue and has obtained a legal opinion from the Attorney General. That opinion concludes that drug addiction and alcoholism are "physical or mental impairments" within the meaning of section 7(6) of the Rehabilitation Act of 1973, as amended, and that drug addicts and alcoholics are therefore handicapped for purposes of section 504 if their impairment substantially limits one of their major life activities. The Secretary therefore believes that he is without authority to exclude these conditions from the definition. There is a medical and legal consensus that alcoholism and drug addiction are diseases although there is disagreement as to whether they are primarily mental or physical. In addition while Congress did not focus specifically on the problems of drug addiction and alcoholism in enacting section 504, the committees that considered the Rehabilitation Act of 1973 were made aware of the Department's long-standing practice of treating addicts and alcoholics as handicapped individuals eligible for rehabilitation services under the Vocational Rehabilitation Act.

The conclusion that Congress intended to include past drug users within the protections of the Act is reasonable as a matter of public policy as well. Drug addiction is a serious public problem. It is therefore not surprising that Congress would wish to provide assistance for those who have overcome their addiction and give some support and incentive for those who are attempting to overcome it. The HEW regulations including drug addicts as handicapped individuals for purposes of § 504 merely recognize these realities. I therefore conclude that persons with histories of drug use, including present participants in methadone maintenance programs, are "handicapped individuals" within the meaning of the statutory and regulatory language.

The City treats drug users as if they were handicapped, yet discriminates against them. The Regulations provide that even pre-employment inquiries into handicaps are prohibited for purposes other than to determine "an applicant's ability to perform job-related functions." Regulations § 84.-14(a). Although plaintiffs had met the requirements of all selection criteria except the medical examination, they were disqualified at the very final stage of the hiring process solely because of their former drug abuse. Furthermore, plaintiffs submitted uncontested evidence that persons with a history of substance abuse, and in particular ex-heroin addicts, could be employed successfully. (Affidavit of Thomas W. Collins, par. 14; Woody Affidavit, par. 29–34; Dodson Affidavit, par. 11). *See also Beazer v. New York City Transit Authority*, 399 F.Supp. 1032, 1037, 1048–1049, 1058 (S.D.N.Y.1975), *aff'd* 558 F.2d 97 (2d Cir. 1977). Thus, by virtue of the absolute exclusion from consideration for city employment, the

---

**3.** The HEW analysis of the regulations states: Under the definition of 'record' in paragraph (j)(2)(iii), persons who have a history of a handicapping condition but no longer have the condition, as well as persons who have been incorrectly classified as having such a condition, are protected from discrimination under section 504. Frequently occurring examples of the first group are persons with histories of mental or emotional illness, heart disease, or cancer . . . . .

City denied them the benefits of a program receiving federal financial assistance (*e. g.* CETA funds) in direct violation of the Act.[4]

Having determined that plaintiffs fall within the ambit of § 504 and that the City has discriminated against them, I turn now to a consideration of whether a private cause of action may be inferred from the Act to vindicate plaintiffs' rights. The Act itself provides no specific enforcement mechanism. However, one of the clear purposes of the statute, as set forth in 29 U.S.C. § 701(8), is to prevent employment discrimination against and expand employment opportunities for handicapped individuals. I believe that since plaintiffs are handicapped individuals subject to the protection of the statute they are entitled to a remedy under it.

The Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), prescribes an analysis for determining when a private enforcement remedy should be inferred:

First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? (Citations omitted.)

*Lloyd v. Regional Transportation Authority*, 548 F.2d 1277, 1284–8 (7th Cir. 1977) offers an exhaustive discussion of the import of *Cort v. Ash* in the present context. There, the court concluded that § 504 extended affirmative rights to all handicapped individuals and held that such rights are enforceable in the courts by a private right of action. The court further held that *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974)[5] was controlling in the 504 context:

Because of the near identity of language in § 504 of the Rehabilitation Act of 1973

---

**4.** I emphasize, however, that the statute and regulation apply only to discrimination against qualified handicapped persons solely by reason of their handicap. If in any individual situation it can be shown that a particular addiction or prior drug use prevents successful performance of a job, the applicant need not be provided the employment opportunity in question. As stated in the HEW analysis of the Act:

The Secretary wishes to reassure recipients that inclusion of addicts and alcoholics within the scope of the regulation will not lead to the consequences feared by many commenters. It cannot be emphasized too strongly that the statute and the regulation apply only to discrimination against qualified handicapped persons solely by reason of their handicap. The fact that drug addiction and alcoholism may be handicaps does not mean that these conditions must be ignored in determining whether an individual is qualified for services or employment opportunities. On the contrary, a recipient may hold a drug addict or alcoholic to the same standard of performance and behavior to which it holds others, even if any unsatisfactory performance or behavior is related to the person's drug addiction or alcoholism. In other words, while an alcoholic or drug addict may not be denied services or disqualified from employment solely because of his or her condition, the behavioral manifestations of the condition may be taken into account in determining whether he or she is qualified.

With respect to the employment of a drug addict or alcoholic, if it can be shown that the addiction or alcoholism prevents successful performance of the job, the person need not be provided the employment opportunity in question. For example, in making employment decisions, a recipient may judge addicts and alcoholics on the same basis it judges all other applicants and employees. Thus, a recipient may consider—for all applicants including drug addicts and alcoholics—past personnel records, absenteeism, disruptive, abusive, or dangerous behavior, violations of rules and unsatisfactory work performance. Moreover, employers may enforce rules prohibiting the possession or use of alcohol or drugs in the work-place, provided that such rules are enforced against all employees. 42 Fed.Reg. 22686 (May 4, 1977). In this case, however, the City concedes that prior drug abuse and/or present maintenance on methadone are factors which alone do not detract from an applicant's qualifications.

**5.** *Lau v. Nichols* held that § 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d creates a private cause of action.

and § 601 of the Civil Rights Act of 1964, *Lau* is dispositive. Therefore, we hold that § 504 of the Rehabilitation Act, at least when considered with the regulations which now implement it, establishes affirmative rights and permits this action to proceed.

548 F.2d at 1281.

I am in full agreement with the Court of Appeals for the Seventh Circuit. The named plaintiffs are among the class specifically benefited by the enactment of the statute. Thus plaintiffs meet the standard established by the first criterion in the *Cort* analysis.

The legislative history of 1974 Amendments to the Rehabilitation Act evidences the legislative intention to create a private cause of action. In considering the Act, the Committee on Labor and Public Welfare emphasized the parallels between the Act and the 1964 Civil Rights Act, 42 U.S.C. § 2000d. As noted in the Committee Report to the Senate, the legislature endorsed the inclusion of a private right of action as a means of enforcing 29 U.S.C. § 794:

> This approach to implementation of section 504, which closely follows the models of the above-cited anti-discrimination provisions, would ensure administrative due process (right to hearing, right to review), provide for administrative consistency within the Federal government as well as relative ease of implementation, and *permit a judicial remedy through a private action.* (Emphasis supplied).

4 U.S. Code Cong. & Admin. News, p. 6391 (1974).

As to the third requirement of *Cort,* it is consistent with the underlying scheme to infer such a remedy. Indeed, one of the explicitly detailed purposes of the Rehabilitation Act of 1973 was the enhancement of employment possibilities for handicapped individuals. A private right of action for plaintiffs is therefore not only compatible with the legislative intent, but also is necessary to secure the Act's remedial purposes.

Finally, resort to federal law in this context does not infringe upon the state by encouraging a federal action in an area traditionally and appropriately reserved to the states. A major aspect of the Rehabilitation Act was the creation of federal standards and enforcement mechanisms to eliminate discrimination against the handicapped. The legislative scheme parallels the federal government's programs for dealing with race and sex discrimination and other causes of action ordinarily grounded in the Federal Civil Rights Act, 42 U.S.C. § 1981, *et seq.* In addition, this does not appear to be an area which the state of Pennsylvania has traditionally shown a major interest in regulating.[6]

■ In view of the fact that all four *Cort* tests are satisfied, I hold that § 504 implicitly provides a private cause of action.[7] *See Kampmeier v. Nyquist,* 553 F.2d 296, 299 (2d Cir. 1977). Having concluded that plaintiffs are entitled to a remedy on this statutory basis, I would ordinarily not consider their constitutional claims. However, since this is a case of first impression in this Circuit concerning the Rehabilitation Act and my decision may well be subject to reconsideration on appeal, in the interests of sound judicial administration I will con-

---

**6.** As Judge Higginbotham pointed out in *Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809 (E.D.Pa.1977):

> [T]hat the area was one not traditionally controlled by the State of Pennsylvania is evidenced by the inclusion, only recently, of the employment of handicapped persons as one of the goals to be fostered by the Pennsylvania Human Relations Act.

**7.** It appears that *Gurmankin v. Costanzo,* 411 F.Supp. 982 (E.D.Pa.1976), *aff'd* 556 F.2d 184 (3d Cir. 1977), is in accord with this decision. In *Gurmankin,* the Court of Appeals for the

Third Circuit acknowledged that since the injuries for which Ms. Gurmankin was seeking recovery predated the Act, the Act could not provide a remedy in her case. The court stated, however, that had this not been so, it would have sustained her recovery under § 504 rather than reach the due process ground relied upon in the decision. *Cf. also Baines v. Converse College,* 2 Pov.L.Rep. (CCH) ¶ 24,732 (D.S.C. July 13, 1977); *Sites v. McKenzie,* 423 F.Supp. 1190 (N.D.W.Va.1976); *Hairston v. Drosick,* 423 F.Supp. 180 (S.D.W.Va.1976); *Cherry v. Mathews,* 419 F.Supp. 922 (D.D.C.1976).

sider plaintiffs' constitutional arguments as well.

## C. DEFENDANT'S POLICY IS VIOLATIVE OF THE EQUAL PROTECTION AND DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### 1. EQUAL PROTECTION:

Plaintiffs contend that the City's refusal to hire them violates equal protection. They claim that the City's absolute bar to employing former drug users results from an illegal classification of plaintiffs which is unrelated to the City's purpose of hiring qualified employees. The City counters with the argument that the regulation barring the employment of drug users is discretionary in that it is couched in the terms of "may" disqualify and that this discretion has on several occasions been applied. Thus it contends that no classification whatsoever has been created.

Unfortunately, counsel for the City has missed the point. He does not contest that as to the three named plaintiffs, the three plaintiffs who filed affidavits, and a substantial number of other former drug users, the regulations have been used to deny jobs on the sole basis of prior drug use. Therefore, even if the regulations create no arbitrary and absolute classification on their face, a classification of the class of potential employees which plaintiffs seek to represent has been created by the City's method of applying the statute.

There are various standards for testing such a classification under the equal protection clause. Because I believe the issues are clear, I will indulge in applying the standard most favorable to defendants; that is, whether there is a rational relationship between the classification and the legitimate governmental purpose for which it is used. *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). I find that no rational relationship whatsoever exists.

There is no doubt that the City, as an employer, has a legitimate interest in hiring individuals who are qualified to perform particular duties. But defendants have failed to demonstrate that this interest would in fact be threatened by employment of *former* drug users. The hiring policy applied to the named plaintiffs serves as an absolute exclusion of them. No consideration is given to individual factors such as recent employment history, successful maintenance on a methadone program, or evidence of freedom from drug use. It is undisputed that plaintiff Davis has not used drugs since 1972. Plaintiff Sims has been drug free since 1975. Whatever undesirable characteristics may attach to current drug use—such as a possible inability to perform on the job or untrustworthiness due to an addict's need to support his addiction—there is absolutely no basis for concluding that those characteristics will in every case persist after the use has ceased. Thus, I have no hesitancy in terming a regulation which bars former users and addicts from city employment, without any consideration of the merits of each individual case, overbroad and irrational. Such a policy bears no connection whatsoever to the City's interest in maintaining the quality of its work force and assuring that its employees perform their tasks. *Thompson v. Gallagher*, 489 F.2d 443 (5th Cir. 1973). *See also Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 651, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (Powell, J. concurring); *Beazer v. New York City Transit Authority*, *supra*.

### 2. DUE PROCESS:

Plaintiffs also allege a due process violation. They base their claim on the majority opinion in *Cleveland Board of Education v. LaFleur*, *supra*, where the Supreme Court struck down a mandatory requirement that public school teachers take leaves of absence from their employment at a fixed stage in their pregnancies. The court reasoned that this absolute policy created an irrebuttable presumption of physical incompetency due to pregnancy and

thus violated due process because it did not provide for individualized determinations of that incompetency. *Cf. Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Schware v. Board of Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Defendants again argue that the regulation does not create an irrebuttable presumption because the City has on occasion hired past drug users. As noted above, however, the City has applied the policy inflexibly to the named plaintiffs and other members of the class they seek to represent. Thus the City has established a conclusive presumption that drug addiction will affect their job performance. This presumption is "irrebuttable" within the meaning of *LaFleur.*

In *LaFleur* the challenged regulation was found unconstitutional because it created a conclusive presumption that every teacher who is four or five months pregnant is physically incapable of continuing her duties, despite the fact that a pregnant woman's ability to continue past a fixed pregnancy period is an individual matter. The reasoning of *LaFleur* dictates that a city employment policy may not constitutionally exclude all former drug abusers as poor employment risks for all jobs without any determination that the former drug use will affect job performance.

The City must make individual evaluations of each applicant in light of the demands of the position in question. The plaintiffs in this case were in fact found to meet all the present requirements for City employment and were excluded only because of the conclusive operation of the challenged policy. I believe that as a matter of due process the City had an obligation to at least give plaintiffs an opportunity to show that their former drug use would not have affected their ability to work to the City's satisfaction. *See Sugarman v. Dougall,* 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973).

I make this ruling fully cognizant of the fact that there is a significant distinction between *LaFleur* and this case. In *LaFleur,* the plaintiff teachers at the time of their termination were already working, and prior case law had made it clear that they had a procedural due process right to a hearing before their termination. Here plaintiffs had not yet commenced their employment at the time the irrebuttable presumption was applied. I do not hold that before a hiring decision a plaintiff is entitled to a full hearing with respect to all job-qualifying characteristics. But if the City establishes a policy which is as facially arbitrary as the one in the case at bar and seeks to apply it in a conclusive manner, then plaintiffs should, at a minimum, be given an opportunity to demonstrate that the policy is inappropriate in their case. *Cf. Scott v. Macy,* 121 U.S.App.D.C. 205, 208, 349 F.2d 182, 185 (1965) (McGowan, J., concurring) (exclusion of homosexuals from civil service).

*Beazer v. New York City Transit Authority, supra,* is on point. The court in *Beazer* held that an absolute ban against public employment by a municipal transit authority of present and past methadone maintained persons was a violation of due process and equal protection. The court reasoned that, even assuming a rational basis for concluding that some such applicants would pose employment risks, a conclusive bar based on an irrebuttable presumption of incompetency is unconstitutional:

> It is perfectly clear that there are substantial numbers of present or past methadone maintained persons who would be capable of performing many of the jobs at the TA. Individual consideration, or narrower rules rationally related to certain classifications of jobs, are constitutionally required.

399 F.Supp. at 1058. I agree with *Beazer,* and believe that its reasoning is even more compelling in the case at bar, where the City's policy is applied to persons who are admitted to have no current connection with drugs whatsoever.[8]

---

**8.** I note that the Supreme Court in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), narrowed the possible application of the irrebuttable presumption doctrine on the basis of the type of "right" affected by the presumption in that case. However, I agree

## D. CONCLUSION

I have held that because the City's exclusion of former drug users bears no rational relationship to the City's goal of hiring competent employees, the City must make individual evaluations of each applicant's qualifications in light of the demands of the position in question. The uncontradicted facts establish that the plaintiffs were found to meet all the present requirements for City employment and were excluded only because of the automatic operation of the City's policy against former drug users. This court has been presented with no evidence to contradict plaintiffs' position that former drug abuse does not make plaintiffs less qualified for City employment than other applicants.

The City's employment policy bears no rational relationship to the demands of jobs for which plaintiffs applied. The regulation which bars the class of persons plaintiffs seek to represent from City employment without any consideration of the merits of each individual's application violates the Equal Protection and Due Process Clauses of the United States Constitution, as well as the Federal Rehabilitation Act. Accordingly, plaintiffs' Motion for Summary Judgment will be granted.

## II. THE MOTION FOR CLASS CERTIFICATION

■■■ I turn now to plaintiffs' Motion for Class Certification. Plaintiffs seek to represent a class of all persons who have been denied employment with the City solely on the basis of prior drug use or addiction. The City has not filed any papers opposing class certification. Nevertheless, I have throughout this litigation expressed my hes-

with the district court in *Gurmankin v. Costanzo*, 411 F.Supp. 982 (E.D.Pa.1976), *aff'd* 556 F.2d 184 (3d Cir.1977), that the *LaFleur* analysis is appropriate where, as here, an objectively definable group is denied public employment. *See also Duran v. City of Tampa*, 430 F.Supp. 75, 78 (M.D.Fla.1977).

**9.** Fed.R.Civ.P. 23(a) states:
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued

itation at certifying a class because I feared that such certification might result in unnecessarily burdensome sanctions against the City if the merits would be decided in plaintiffs' favor. Therefore, I have on several occasions requested counsel for the City to suggest to me remedies alternative to class relief. Following argument on the motion for summary judgment, I held a conference in chambers and requested all parties to propose alternatives. Despite my requests, no proposals have been forthcoming. I have independently considered alternatives—such as declaratory relief on the legal issues—and foresee problems inherent in employing any of them. Therefore, having determined that plaintiffs are correct in their legal position on the merits, I now rule that the proper method for assuring appropriate relief is to grant class certification.

■■■ Plaintiffs seek class certification pursuant to Fed.R.Civ.P. 23(b)(2). As a preliminary matter, the burden is upon the plaintiffs to demonstrate that the four prerequisites of Fed.R.Civ.P. 23(a) have been met.[9] *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Davis v. Romney*, 490 F.2d 1360 (3d Cir. 1974).

Three of the prerequisites are easily satisfied. It is clear that "there are questions of law or fact common to the class." Fed.R. Civ.P. 23(a)(2). Counsel for the City concedes that as to some applicants for employment—such as the representative plaintiffs here—an absolute disqualification from employment due to drug use has been applied.

as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The legality of this absolute bar is a question common to all members of the alleged class, and is the crux of this case. *Cf. Webb v. Westinghouse Electric Corp.*, 78 F.R.D. 645 at 650 (E.D.Pa.1978); *Hannigan v. Aydin Corp.*, 76 F.R.D. 502 at 511 (E.D.Pa.1977).

Plaintiffs also satisfy the typicality requirement of Fed.R.Civ.P. 23(a)(3). Each has been a direct victim of the absolute employment bar at issue here. One class plaintiff is currently enrolled in a methadone program and the two others have not used drugs for a substantial period. The City does not contest that they have been refused employment solely on the basis of their drug histories, nor could it have done so in view of the fact that plaintiffs had already been accepted for employment when their drug histories were discovered. Accordingly, plaintiffs' claims fall squarely within the scope of the claims belonging to the class they seek to represent.

There is also no doubt that plaintiffs would represent the class adequately. Fed.R.Civ.P. 23(a)(4). The standard for adequacy of representation was defined in *Wetzel v. Liberty Mutual Ins. Co., supra* at 247.

Adequate representation depends on two factors; (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

Plaintiffs' attorneys, two members of Community Legal Services and one well-regarded independent attorney with a reputation for representing the underprivileged, have demonstrated their competence throughout this litigation. As discussed above, the interests of the representative plaintiffs are identical to those of the entire class, and so no conflict problem can arise.

 The only aspect of Fed.R.Civ.P. 23(a) which is not squarely satisfied is the numerosity requirement. There is no set rule for the number of prospective class members which must exist before a class is certified. *Cypress v. Newport News General & Nonsectarian Hospital Association*, 375 F.2d 648, 653 (4th Cir. 1967). The court, in considering class certification, must take a flexible approach governed by the concept that joinder of all class members must be impracticable before a class should be certified. 3B Moore's Federal Practice 23.05 at 23–280 (1970).

In this action, the precise number of prospective class members is unknown. The three class representatives and three additional parties have come forward with affidavits demonstrating that they have been victims of the City's employment policy with respect to drugs. Records of those who have been affected by the City's policy in the past exist, but are in the control of the City's medical dispensary. Throughout this litigation, the City has been singularly uncooperative in discovery matters, and its response to requests by the plaintiffs and the court for information relating to the size of the prospective class has been no exception. Counsel for the City, however, concedes that numerous persons in addition to the named plaintiffs and the three affiants fall within the class definition. This concession is borne out by the deposition testimony of the administrators of the City's employment policies, who have testified that the City has applied the absolute employment bar in a significant number of cases.

Although the ultimate size of the class is as yet unknown, the circumstances nevertheless point to the eventuality that the numerosity requirement of Fed.R.Civ.P. 23(a)(1) will be satisfied. Since the court's present inability to determine the size of the class is the fault of the City, and in view of the fact that counsel for the City has failed to oppose class certification and has conceded that a significant number of as-yet-unidentified persons exist who fall within the class, I rule that the numerosity requirement is satisfied. Should the City at a later date determine that only a small number of class members exist, I will entertain a motion to appropriately limit the relief ordered.

Having ruled that the prerequisites of Fed.R.Civ.P. 23(a) are satisfied, I turn now to the question of whether the requirement

of Fed.R.Civ.P. 23(b)(2) is met. Rule 23(b)(2) states:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

As the foregoing discussion of the merits of the Motion for Summary Judgment illustrates, the City has enacted an employment policy generally applicable to the class. Although equitable monetary relief for the members of the class is also appropriate, final injunctive and declaratory relief is unquestionably mandated where the City's employment policy is unconstitutional as applied to the class. Rule 23(b)(2) is therefore satisfied.

Accordingly, I certify the following class.

(a) For all claims arising under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the plaintiff class shall include all persons who have in the past used narcotic or nonnarcotic drugs and who:

(1) applied for municipal employment with the City of Philadelphia at any time between the effective date of § 504 (December 26, 1973) and the date of this opinion and whose applications were denied solely because of prior drug use or present or prior enrollment in a drug rehabilitation treatment program; or

(2) applied for municipal employment with the City of Philadelphia at any time between the effective date of § 504 (December 26, 1973) and the date of this opinion and whose applications are pending.

(b) For all claims arising under the United States Constitution and 42 U.S.C. § 1983, the plaintiff class shall include all persons who have in the past used narcotic or nonnarcotic drugs and who:

(1) applied for municipal employment with the City of Philadelphia between March 15, 1971 (six years prior to the complaint in this action) and the date of this opinion and whose applications were denied solely because of prior drug use or present or prior enrollment in a drug rehabilitation treatment program; or

(2) applied for municipal employment with the City of Philadelphia between March 15, 1971 (six years prior to the complaint in this action) and the date of this opinion and whose applications are pending.[10]

### III. RELIEF

Having granted the Motion for Class Certification and the Motion for Summary Judgment, I turn finally to the issue of what relief is appropriate. Initially, I shall declare unconstitutional the City's current policy with respect to employment of applicants with drug histories and shall enjoin the further application of that policy to all pending and future applications. As to the relief for prior injury due to the use of the policy, several aspects of relief are necessary. Since the City has available to it employment records which would reveal the identity of the members of the class, I will order the defendants to cull those records and present to me within sixty days of the date of the attached order a list of all persons denied municipal employment on the basis of prior drug use or prior or current enrollment in a drug rehabilitation treatment program since March 15, 1971.

At the same time, defendants shall present to me a proposal for establishing an impartial municipal administrative tribunal

---

10. Fed.R.Civ.P. 23(c)(1) requires that the court make a determination of whether a class action may be maintained "as soon as practicable." I have refrained from ruling on this issue until today because of my hesitancy to certify a class against the City where it was not yet apparent that other methods of proceeding might not be more efficient and less burdensome on the City. I note that there is precedent for withholding a decision as to class certification until the decision on the merits of the action even where a Rule 23(b)(2) class is involved. *See Jiminez v. Weinberger*, 523 F.2d 689, 698 (7th Cir. 1975), *cert. denied* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976). *See also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758–62 (3d Cir. 1974), *cert. denied* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1975).

to determine the individual damage claims of the members of the class who have been denied employment solely on the basis of their prior drug histories. A neutral hearing examiner or examiners—in the nature of an arbitrator—shall be the presiding officer at this tribunal, with full authority to adjudicate the claims of the members of the class. Under the regulations governing the tribunal, class members would be required to prove by a preponderance of the evidence (a) that they were denied employment *solely* because of their drug history; and (b) their damages due to the denial of employment, properly mitigated as required by law.

In addition, defendants shall within forty-five days of this order present the court with a form of notice to be sent to class members. The notice shall advise the class members of the substance of this court's decision and shall set a time before which claims must be submitted to the administrative tribunal for adjudication.

Finally, because the class representatives have already established that they fall within the definition of the class, further delay in the final adjudication of their claims would be inappropriate. Accordingly, plaintiffs Davis, D'Elia, and Sims will be permitted to prove their damages at a hearing to be held before me on Thursday, June 8, 1978, at 1:30 p. m.