HAZLETT, APPELLEE, *v.* MARTIN CHEVROLET, INC., APPELLANT.

[Cite as Hazlett *v.* Martin Chevrolet, Inc. (1986), 25 Ohio St. 3d 279.]

(No. 85-1426—Decided August 13, 1986.)

*Carlile, Patchen, Murphy & Allison, Denis J. Murphy* and *Anne C. Berry,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Vincent T. Lombardo,* for Ohio Civil Rights Commission.

*Meermans, Zimmer & Cauffield* and *Robert S. Meermans,* for appellant.

LOCHER, J.  The issue before us is whether drug addiction and alcoholism are handicaps as defined in R.C. 4112.01(A)(13). Pursuant to

the discussion that follows we find for appellee and hold that drug addiction and alcoholism are handicaps as defined by R.C. 4112.01(A)(13).

R.C. 4112.01(A)(13) states that " '[h]andicap' means a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability, including, but not limited to, seeing, hearing, thinking, ambulating, climbing, descending, lifting, grasping, sitting, rising, any related function, or any limitation due to weakness and significantly decreased endurance, so that he can not perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped." R.C. 4112.02 indicates that "it shall be an unlawful discriminatory practice" to discharge, without just cause, an individual on the basis of, *inter alia,* a handicap.

In the course of the evidence adduced below, the *unrebutted* deposition of Dr. Edward Novasel, a physician in general practice, indicated that drug addiction creates in its victims a debilitating chemical imbalance that is an abnormal physical condition. Such condition limits the user's functional ability, including physical endurance, mental capacity and judgment. While treatment of a drug addiction may cause the condition to go into remission, the effects of the drug may remain for a considerable period of time. It is clear to us that alcohol and/or drug addiction falls within the ambit of R.C. 4112.01(A)(13).

A number of courts have reviewed this issue and have come to the conclusion that drug and/or alcohol addiction is a handicap. In *Davis* v. *Bucher* (E.D. Pa. 1978), 451 F. Supp. 791, it was determined that "* * *[d]rug addiction is a serious public problem. It is therefore not surprising that Congress would wish to provide assistance for those who have overcome their addiction and give some support and incentive for those who are attempting to overcome it.* * *" *Id.* at 796. Although the basis for the *Davis* decision, the Rehabilitation Act of 1973, Section 701 *et seq.,* Title 29, U.S. Code, was subsequently amended to exclude alcoholism and drug addicts whose "current" abuse prevented the proper performance of their jobs, no suggestion or amendment has been made to indicate a prior abuse or condition in remission would not be a handicap as articulated in *Davis.* See, also, *Whitaker* v. *Bd. of Higher Edn. of New York* (E.D.N.Y. 1978), 461 F. Supp. 99, 106 (no basis found to challenge characterization of alcoholism as a handicap).

In *Consolidated Freightways, Inc.* v. *Cedar Rapids Civil Rights Comm.* (Iowa 1985), 366 N.W. 2d 522, the Iowa Supreme Court held that alcoholism could constitute a handicap and protected disability under a civil rights ordinance. Similarly, in *Squires* v. *Labor & Industry Review Comm.* (1980), 97 Wis. 2d 648, 294 N.W. 2d 48, it was undisputed that the employee there was handicapped by reason of his alcoholism.

The threads that run through these cases are first, that alcoholism and/or drug addiction is a handicap and second, if an individual, because of alcoholism and/or drug addiction is unable to perform his or her responsibilities, he or she may be lawfully discharged. We do not depart from these rules today.

In the present case evidence demonstrated that on several occasions appellant had granted disability or sick leave for employees. In one instance three or four weeks' leave was granted for phlebitis; in another, four weeks' leave was allowed for a heart attack. Most importantly, the unrebutted testimony of appellant's own witness, general manager Arthur Sweet, indicated that appellee was doing a good job: "Jim was doing a good job. I can't say that at all times I was satisfied, but he was doing a good job. His figures and reports looked good." Moreover, when appellant was notified by the OCRC that drug addiction was a handicap, Sweet asked appellee if he could come back to work. Appellee testified that when he spoke with Sweet he asked for leave of "28 days or a month. And at that time Mr. Sweet expressed what I determined was concern. And he had the attitude of gees, what the matter? [*Sic*.] And I told him at that time that I had problems with drugs and alcohol. And it was at that time that he told me that that hit him like a ton of bricks. And he'd have to terminate me. They'd have to replace me." In contrast, Sweet testified that the reason for termination was that appellant could not do without appellee for the requested length of time.

Insofar as due deference must be given to the administrative resolution of evidentiary conflicts, *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 111 [17 O.O.3d 65], sufficient evidence was adduced for us to conclude that the commission's findings were supported by reliable, probative, and substantial evidence. *Plumbers & Steamfitters Commt.* v. *Ohio Civil Rights Comm.* (1981), 66 Ohio St. 2d 192 [20 O.O.3d 200], paragraph two of the syllabus; R.C. 4112.06(E). We uphold such findings and affirm the determination by the court below of the commission's decision.

Some additional observations are in order to insure that our decision herein is not misconstrued. Today, we have not endorsed drug addiction or alcoholism. Where chemical dependency adversely affects job performance an employer is clearly within its rights to discharge the employee. Where, as in the instant case, an employee is discharged in contravention of statute on the basis of a handicap, the consequence of such action resulting in a judgment for the employee is appropriate.

To prove a prima facie case of handicap discrimination the commission must show not only that the complainant was handicapped and that the action was taken by the employer, at least in part, because the complainant was handicapped, but, further, that the complainant, though handicapped, can safely and substantially perform the essential function of the job in question. Ohio Adm. Code 4112-5-02(J). It is absurd to state, as the dissent does below, that the appellate decision stands for the proposition that

"drug users, abusers, and pushers * * * have more rights and better rights than the balance of society."

One measure of a culture's viability and maturity is established by how well it addresses its problems. We gain nothing by pretending alcoholics and drug addicts can solve their problems without help or that substance abuse problems do not exist. By affirming that alcoholics and drug addicts are handicapped, to the extent that a dependency exists and has not yet compromised work skills, we seek to deal with a problem at a point where these individuals are still productive members of society, can still be helped, and still have the incentive to help themselves. Beyond this point the statute does not protect the chemically dependent individual. It is with these considerations in mind that we hold that drug addiction and alcoholism are handicaps as defined in R.C. 4112.01(A)(13) and affirm the judgment of the court below.

*Judgment affirmed.*

CELEBREZZE, C.J., C. BROWN and WRIGHT, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur in judgment only.

HOLMES, J., concurs in part and dissents in part.

HOLMES, J., concurring in part and dissenting in part. I concur with that part of the majority opinion which ascribes handicap status to one who is an alcoholic and who is properly performing his assigned duties in spite of such ailment. However, the inclusion of drug addiction as a handicap, under the facts of this case, as well as the finding that the employer did not have just cause to fire appellee, cannot be reconciled with R.C. 4112.02 or the findings of fact presented to this court. To this I am compelled to dissent.

Although both alcoholism and drug addiction may be termed substance abuse and as such are generally not considered as being handicaps, it must initially be pointed out that there are several distinctions between alcoholics and drug addicts, which militate toward diverse treatments for those employees discovered to be so afflicted. Alcoholism results from any number of factors, physical predisposition as well as social and psychological problems.[1] Many of these causes are hidden from one who even casually imbibes. The purchase of alcohol by adults and the drinking thereof are not unlawful in Ohio. Our public policy would reasonably dictate a compassion for one so ensnared in alcoholism, and seek to en-

---

[1] Meyers & Melchior, Alcoholic Drinking: Abnormal Intake Caused by Tetrahydropapaveroline in the Brain (1977), 196 Science 554; A Chemical Cause of Alcoholism (1977), 111 Science News 327; Alcohol Metabolism: All in the Family (1977), 115 Science News 6.

courage employers along the more beneficial course of action, which is to help such troubled employee to recover.[2]

A different public policy may reasonably be applied to the drug addict who becomes addicted as a result of his own illegal actions. While a state may not statutorily attribute unlawfulness to the *status* of drug addiction, *Robinson* v. *California* (1962), 370 U.S. 660, the activities surrounding such addiction may be established to be unlawful. The initial stages of the use of drugs involve illegal purchase, possession and use of such substances. The consequent addiction therefore flows from activities which society has rendered unlawful with the aim of eliminating or hopefully curtailing the activity. The drug abuser, in contrast, has asserted his will against both law and common convention to indulge his personal whims.

One who continues to use hard drugs, as in the case before us, also continues to engage in illegal behavior. Such use often entails the criminal sale of drugs. To so burden the employer with the mass of illegal activities attendant to drug addiction surely encumbers the employer with far more than he reasonably anticipated to be within the employment relationship. The presence of a hard drug addict at the place of employment jeopardizes one's business reputation. It places at risk the physical safety of other employees, as well as tangible valuables an addict may have access to. It is therefore somewhat irrational to bestow upon drug addicts the emoluments attendant to the status of one who, through no fault of his own, becomes handicapped.[3]

The finding of the commission below was that appellee's discharge was solely because of his status as an alcoholic/drug addict and accordingly violated R.C. 4112.02(A) which states:

"It shall be an unlawful discriminatory practice:

"(A)  For any employer, because of the race, color, religion, sex, national origin, *handicap,* age, or ancestry of any person, *to discharge without just cause* * * *." (Emphasis added.)

R.C. 4112.02 also provides in subsection (L) that:

"Nothing in divisions (A) through (E) of this section shall be construed to require a handicapped person to be employed * * * in a job that requires him routinely to undertake any task, the performance of which is *substantially and inherently impaired* by his handicap." (Emphasis added.)

It is my view that the facts of this case did not warrant the finding of the commission that the discharge of the employee here was solely because of his addiction and therefore not justified. Among the issues to be determined by the trier of the fact in these cases are whether the particular addiction had in fact resulted in job impairment, whether such addiction *per*

---

[2] Hill, Alcoholism and the World of Work, Proceedings of the 28th Annual Meeting of the National Academy of Arbitrators (Dennis & Somers, Eds. 1975) 93, 94.

[3] We do not have before us the case of one who innocently, through a misdiagnosis or other legitimate means, became drug-addicted.

*se* was the cause of the discharge, whether the continuance of the employee would be significantly detrimental to the business of the employer, and whether the addiction and/or the treatment process would interrupt the necessary business procedures of the employer.

The facts of this case show that the employee had failed to appear at work for a week because of his addiction, and when he appeared the following week he was unable to proceed to his tasks, and then indicated to the employer that he needed a month off to undergo treatment. The employer testified that he had responded to the employee that the company could not spare him or do without him for the period requested. Upon these facts it would have been more reasonable if the commission would have concluded that the employee's tasks were "substantially and inherently impaired by his handicap."

More importantly, relative to the facts of this case, appellee's employment duties included responsibilities for the arrangement of financing, post-sale services, and the closing of the transaction. He was the last representative of the company which the customer was to have seen. As such, his impression on the customer would be crucial to the reputation of the company in the community and consequent future sales, as well as repeat business from the customer. Once it would become known that such person regularly committed the felonious acts normally associated with drug addiction, and to which addiction appellee admits, the business reputation of the company could not fail but to suffer injury. Accordingly, the hard drug addiction here at issue "substantially and inherently" impairs performance of the kind of job appellee was hired to do.

As a result of co-employee coverup, as found within the facts here, the employer was not made aware until after the termination that appellee used hard drugs while at work, sometimes on a daily basis, and sold illegal drugs while on the job. Such actions are clearly misconduct and are *per se* just cause for discharge. It is only supportive of the prior discharge that such information became available to the employer only after the discharge.

The determination that the employee is here entitled to reinstatement, as well as back pay, also belies the record. The numerous facts which came to light after appellee's job termination justify not only the firing but the decision to refrain from rehiring appellee. Proof of either would eliminate any obligation to make payment of past wages, since the obligation to pay back wages springs only from the absence of legal justification by the employer in firing or refusing to rehire such employee. The ultimate offer of the employer to rehire appellee is not determinative because by that time appellee had proven that he was indeed recovered.

It should not be forgotten that the employee has the responsibility of performing his job satisfactorily, complying with reasonable work rules as well as the law, and arriving for work at the appointed time. All of the job requirements must be met by the employee in spite of any disability. An

employer, in firing or refraining from rehiring the employee, may consider all factors which could ordinarily be considered as standards for employment, *i.e.*, past personnel records, absenteeism, disruption, abusive or dangerous behavior, violations of rules or the law, unsatisfactory work, etc. See *Southeastern Community College* v. *Davis* (1979), 442 U.S. 397, 406, and 42 Fed. Reg. 22686-22689 (1977). In the present case, the employee took a week off without advance notice, and knowing there could be no ready replacement. By way of explaining his absence, he confessed that he was presently drug-addicted and an alcoholic, and that he hoped to be rehabilitated in the future. The employer's decision to terminate the employment relationship was based upon the employer's immediate requirements and the necessity for such employee in the operation of the business, the sociological-business effect of the continuance of the employment, and was quite reasonable under the then-present circumstances.

Accordingly, I would reverse the judgment of the court of appeals.

