OPINION *Page 2 
{¶ 1} On April 8, 2005, appellant, Cinthia Feldkamp, filed a complaint against appellee, MedCentral Health Systems, claiming employment discrimination. Other defendants and claims were included, but were voluntarily dismissed by appellant and are not pertinent to this appeal.
 {¶ 2} Appellant is a licensed practical nurse, and began working for appellee on December 31, 2002. On January 13, 2004, appellant underwent knee surgery. Thereafter, appellant experienced severe pain and was unable to stand or walk or perform her duties. Appellant took all of her paid time off which included vacation, sick time and short term disability leave, and then took a medical leave under the Family Medical Leave Act. When appellant returned to work on July 12, 2004, appellee assigned her to the Medical Records Department under the Modified Job Program which was designed as temporary job placement for an employee with a temporary disability. Appellant was placed on lay-off status from her position on August 16, 2004 after appellee was informed appellant was in fact permanently disabled. At the end of the lay-off status, November 8, 2004, appellant's employment was terminated.
 {¶ 3} On July 24, 2006, appellee filed a motion for summary judgment. By opinion and judgment entry filed December 26, 2006, the trial court granted the motion and dismissed the complaint.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows: *Page 3 
 I {¶ 5} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEE, FINDING THAT DEFENDANT HAD REASONABLY ACCOMMODATED APPELLANT AS A MATTER OF LAW."
 I {¶ 6} Appellant claims the trial court erred in granting summary judgment to appellee on her R.C. 4112.02 claim which prohibits discrimination because of a disability. We disagree.
 {¶ 7} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 8} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 9} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same *Page 4 
standard and evidence as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35.
 {¶ 10} In order to establish a prima facie case of disability discrimination, appellant must establish the following:
 {¶ 11} "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question. (Hazlett v. Martin Chevrolet,Inc. [1986], 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478, followed.)"Hood v. Diamond Prods., Inc. (1996), 74 Ohio St.3d 298, paragraph one of the syllabus.
 {¶ 12} Once this hurdle is passed, appellee's burden is to establish a legitimate nondiscriminatory reason for the termination:
 {¶ 13} "Once the plaintiff establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken.* * * Legitimate, nondiscriminatory reasons for the action taken by the employer may include, but are not limited to, insubordination on the part of the employee claiming discrimination, or the inability of the employee or prospective employee to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question." Hood, at 302. (Citations omitted.)
 {¶ 14} Appellant argues genuine issues of material fact exist concerning appellee's termination of her employment. Appellant argues appellee failed to provide reasonable accommodations for her disability, and did not state a nondiscriminatory *Page 5 
reason for her termination. For purposes of our review under summary judgment, we presume appellant qualifies as disabled under R.C. 4112.02.
 {¶ 15} After exhausting all of her leave, appellant returned to work and was assigned to the Medical Records Department under the Modified Job Program which was designed as temporary job placement for an employee with a temporary disability. After appellee was informed appellant was in fact permanently disabled and was restricted to light duty, appellee removed her from the Modified Job Program and placed her on lay-off status on August 16, 2004. Hildreth aff. at ¶ 12. Thereafter, appellee's Human Resource Department provided appellant with a list of open positions, and subsequently sent appellant postings for job openings. Hildreth depo. at 70-72; Hildreth aff. at ¶ 13. Appellant did not apply for any of these positions. Hildreth aff. at ¶ 14.
 {¶ 16} All parties concede appellant could not have returned to her original position as a licensed practical nurse under her permanent medical restrictions. Hildreth aff. at ¶ 11.
 {¶ 17} The gravamen of the case sub judice is whether the events leading from August 16, 2004 qualify as reasonable accommodations for appellant's disability and that as a result, appellant's termination was nondiscriminatory.
 {¶ 18} It is appellant's position she was prematurely terminated from the Modified Job Program, and she should have been permanently placed in the Medical Records Department as a reasonable accommodation to her disability.
 {¶ 19} Appellee asserts pursuant to the Modified Job Program, appellant understood and was told the Medical Records position was temporary as of July 12, *Page 6 
2004. Hildreth depo. at 66-67; Hildreth aff. at ¶ 9-10; Defendant's Exhibits V and W attached to Hildreth Affidavit.
 {¶ 20} Appellant asserts three positions were open in the Medical Records Department, with two being filled by Crestline employees and one being filled by a non-Crestline employee; however, there is no mention of a date of the non-Crestline hiring. Feldkamp aff. at ¶ 19-20. Prior to her termination, appellant requested permanent assignment to the Medical Records Department. Perkeybile depo. at 44.
 {¶ 21} Appellee's Vice President of Human Resources, Beth Hildreth, explained the Modified Job Program as follows:
 {¶ 22} "When we place people in modified assignments, they're not necessarily positions that are, quote, available for anyone to actually take at that moment in time. We find departments who have tasks that need to be done. They may or may not have approval at that point to actually be seeking someone to fill the position on an ongoing basis. It's work that we need done that they can do with their restrictions.
 {¶ 23} "Once they have permanent restrictions, then we say that they need to find a position that works within those restrictions, because her former LPN position didn't. And then that department, if it is a legitimate position that's open, they can apply for that position and can be considered with, you know, other candidates who are interested in it.
 {¶ 24} "But a lot of times, it's not even a set position that's actually a job for the long haul. It's part of a job. It's a set of tasks. It's a temporary kind of thing. It's something that comes up that we provide to the department. It doesn't cost the department anything at that point in time because we pay for it out of our area. And *Page 7 
they don't necessarily have approval to have somebody there on an ongoing basis to make it a legitimate job." Hildreth depo. at 68-69.
 {¶ 25} Ms. Hildreth further elaborated on the actions taken by appellee after appellant was released from the Modified Job Program. Hildreth depo. at 69-72. Specifically, when questioned about openings in the Medical Records Department, Ms. Hildreth stated she could not recall if full-time positions were available in August of 2004, but the department head "anticipated some openings coming shortly." Hildreth depo. at 73-74. Unfortunately, about the same time, a decision was made to close Crestline Hospital and a hiring freeze was temporarily put into effect until a plan was formulated. Hildreth depo. at 74. As a result of the closure, all Crestline Hospital employees were given priority for sixty days and two Crestline employees were given positions in the Medical Records Department. Hildreth depo. at 74-75. Ms. Hildreth explained the following:
 {¶ 26} "Q. Did anyone inform Cindy Feldkamp that she could not have the medical records position because of the Crestline closure?
 {¶ 27} "A. The timing was such that it was within a couple of days of when Cindy was talking to Lynn about a job. And when the Crestline decision was made — and I know that we noted it in her letter, being forthright with her that while we were giving her, you know, a period of time to find a position, Crestline was given priority and that would make the actual openings more limited than normal.
 {¶ 28} "Q. And what letter was that?
 {¶ 29} "* * *
 {¶ 30} "A. It's dated August 16th, 2004." Hildreth depo. at 75. *Page 8 
 {¶ 31} As a result of appellant's lay-off status, she was given a list of open positions and was e-mailed positions as they became available by Julia Kurtz. Hildreth depo. at 79-80. E-mails of open positions were sent on August 19, 23, 24, and 30, and September 7, 8, and 13. Hildreth depo. at 80-83. The Crestline priority ended on September 24, 2004. Hildreth depo. at 84. After this date, appellant was continually notified of openings. Id. Appellant was informed of the Crestline priority in a letter dated August 16, 2004, informing her of the sixty day freeze and her lay-off status. Defendant's Exhibit Y, attached to Hildreth Affidavit.
 {¶ 32} Basically, the facts are not contested. The cold truth within the timeline supports the trial court's conclusions that appellant's termination did not violate R.C. 4112.02, et seq.
 {¶ 33} Appellant was assigned to a job in the Medical Records Department under the Modified Job Program. In agreeing to this position, she understood it was temporary. As stated in Defendant's Exhibits V and W, the Modified Job Program was created to accommodate employees with temporary restrictions, and the objective was to use the disabled employee's current physical capacities while attempting to return the employee to full duty. Appellant entered the Modified Job Program on July 12, 2004.
 {¶ 34} On or about July 24, 2004, a decision was made to freeze all current openings for sixty days to accommodate and give priority to Crestline Hospital employees.
 {¶ 35} On August 13, 2004, appellee was notified that appellant's temporary restrictions were permanent. *Page 9 
 {¶ 36} On August 16, 2004, appellant was placed on lay-off status as a result of her physician's report. The purpose and objective of the Modified Job Program to return appellant to her previous employment as a licensed practical nurse ceased.
 {¶ 37} During the period of "reasonable accommodations," there was no job available for appellant until September 24, 2004 when the Crestline priority plan ceased. Two positions in the Medical Records Department were already filled. There is nothing in the record to indicate the third position was open or filled prior to November 8, 2004. Appellant never applied for or requested any other job up to and including the final day of her lay-off status, August 16, 2004 to November 8, 2004.
 {¶ 38} It is the accidents of time and circumstance (Crestline's closure) that resulted in appellant's inability to have a job in the Medical Records Department, and not a result of any lack of reasonable accommodations by appellee.
 {¶ 39} Upon review, we find the trial court did not err in granting summary judgment to appellee.
 {¶ 40} The sole assignment of error is denied. *Page 10 
 {¶ 41} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.
 Farmer, J., Edwards, P.J. and Delaney, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed. *Page 1