**In re Adoption of LASSITER.**

[Cite as *In re Adoption of Lassiter* (1995), 101 Ohio App.3d 367.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 94–CA–38.

Decided Feb. 24, 1995.

*Andrew H. Elder,* for appellee.

*Robert C. Brooks,* for appellant.

FREDERICK N. YOUNG, Judge.

Matthew Michael Sullivan ("Sullivan", or "appellant") appeals from the decision of the probate court of Clark County, Ohio, holding that Sullivan, as the natural father of Michael Andrel Lassiter, failed without justifiable cause to provide for the maintenance and support of his child for a period of at least one year immediately preceding the filing of the petition for adoption of his child by the child's stepfather, Alan Lassiter, and therefore Sullivan's consent to said adoption is not necessary.

The adoption petition was filed on April 7, 1993, by the stepfather, and the mother of Michael, Andrea Denise Lassiter, filed her written consent thereto. The petition alleged that the consent of the natural father, the appellant, was not required pursuant to the provisions of R.C. 3107.07(A), which provides:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the

maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."

The facts in this case are succinctly set forth in the decision of the probate court as follows:

"The child was born on September 13, 1987, in Springfield, Ohio. The parents resided together at 310 W. Euclid Ave. Both were abusing drugs during this two year period.

"Mrs. Lassiter testified that she completed a drug rehabilitation program in 1989, but that Mr. Sullivan continued to use drugs, that being her reason for the dissolving of their relationship. The father returned to the Cleveland, Ohio, area, where he has remained, with the exception of his return to Springfield in an attempted reconciliation with the mother for one month in February, 1990. Drug problems again arose immediately, and Mr. Sullivan left town to seek drug rehabilitation. The parents conversed by telephone for a short time thereafter. Mrs. Lassiter was working at Honda at that time. She stated that she did not seek support for the child but would have accepted it, had it been offered. She added that she would not have denied visitation rights to the father, if he had sought to visit, but that she did not want her son with the father, if he was using drugs. Mr. Sullivan agreed that he continued to have a drug problem until October 10, 1992, and that he could not hold a steady job until becoming employed as a security guard six months ago. He stated that it was his understanding that Mrs. Lassiter did not want to see or hear from him. Furthermore, he said that he went to a support agency in the Cleveland area; once in 1991 and once in 1993, to attempt to start support payments but was refused because he couldn't produce the proper information. He began paying support through the Clark County Support Enforcement Agency in January, 1994."

The testimony cited by the probate court was given at a hearing on the issue of Sullivan's right to withhold consent to the adoption held on February 22, 1994, to the court. Both parents were present and represented by counsel and testified at the hearing. It is undisputed that Sullivan failed to communicate with his child or provide support or maintenance for the child during the year prior to the filing of the petition for adoption. The only issue was whether Sullivan had justifiable cause for such failures, on the grounds, as stated by the trial court:

"(1) that Mrs. Lassiter did not seek support and made it known that she did not want him to visit with the child, if he was still using drugs, and (2) that he was addicted to drugs, was in a rehab program during this period of time and, therefore, was barred by the mother from visitation and was incapable of supporting and maintaining the child."

After properly noting that the law as set forth in R.C. 3107.07(A) is strictly construed to protect the interests of the nonconsenting parent, citing *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, the probate court ruled in favor of Sullivan on the communication issue, finding that he had shown justifiable cause for his failure to communicate. The court then ruled:

"As to the support issue, Mr. Sullivan stated that he was unable to hold a steady job until six months ago because of his drug problem. His attorney offers the argument that having a drug problem and participating in drug rehab programs is akin to being in jail or prison, which, therefore, amounts to justifiable cause for failing to support a child. The Court finds a substantial difference in the two situations in that a person in prison is unable to work because of a court ordered incarceration, whereas, a person with a drug problem has the choice of seeking employment and paying support or not doing so.

"In addition, Mr. Sullivan testified that he had 'been clean' since October, 1992, six months prior to the filing of the Petition herein, and no support was offered during that period of time. Mr. Sullivan stated that he had worked since leaving Springfield but did not hold a job more than six months. Also, he said that he had attempted to arrange for support to be paid by making inquiry at the Support Enforcement office in his home county in 1991 and 1993. Such statements indicate that he had income but did not pay support. Even though the mother was working and apparently providing adequately for the child, she was a single parent until September, 1992, and had the need for additional support expected of a father. Her testimony indicated that she would have accepted support, had it been offered. Therefore, the Court finds that the Petitioner has proven by clear and convincing evidence that the father has failed without justifiable cause to provide for maintenance and support of the child for a period of one year immediately preceding the filing of the Petition herein. Revised Code Section 3107.07(A). *In re Adoption of Carletti* (1992) 78 OApp3d 244 [604 N.E.2d 243]. *In re Adoption of Strawser* (1987) 36 OApp3d 232 [522 N.E.2d 1105]. Interference with visitation rights is not an excuse for a failure to pay support. *In re Adoptions of Bruce* (1989) 56 OApp3d 126 [564 N.E.2d 1110]."

Sullivan filed a timely appeal from that decision of the court and, because of the appeal, no further proceedings in the adoption, including a hearing on the best interest of the child, have been held. Sullivan brings to us three assignments of error, which we will discuss in reverse order:

*"First Assignment of Error*

"The trial court erred as a matter of law when it found that appellant's consent to the adoption was not required.

"*Second Assignment of Error*

"Appellee failed to prove that the placement of the minor child for adoption complied with the law.

"*Third Assignment of Error*

"The court's finding and judgment of failure to support with no justifiable cause is a final appealable order."

## I

Sullivan's third assignment of error is not an argument against an error committed by the probate court but simply maintains that the court's order is a final appealable order which we can consider on the merits. Originally, we had dismissed the appeal on grounds that an order finding that the permission of a natural parent was not necessary to an adoption was not a final appealable order, citing our recent decision in *In re Adoption of Johnson* (Apr. 29, 1994), Miami App. No. 93–CA–22, unreported, 1994 WL 164058. The conflict between the courts of appeals in Ohio on this issue was resolved by the Supreme Court of Ohio on September 21, 1994, when it held that "a trial court's finding pursuant to Revised Code 3107.07 that the consent to an adoption of a party described in Revised Code 3107.06 is not required is a final appealable order." *In re Adoption of Greer* (1994), 70 Ohio St.3d 293, 638 N.E.2d 999. Appellant brought this case to our attention in a motion to reconsider our dismissal of his appeal and on January 17, 1995, we sustained his motion to reconsider. Upon the authority of *Greer*, we therefore sustain his third assignment of error.

## II

In support of his second assignment of error, Sullivan maintains that the record before us contains no clear and convincing evidence of the marriage of the subject parties and, therefore, without proof that the petitioner, Alan Lassiter, is indeed the legal stepparent of the child to be adopted, no adoption could be approved unless the child placement requirements of R.C. 5103.16(D) have been met. Mr. Lassiter, the appellee, argues that this issue was not raised by the appellant to the trial court and the record supports this argument. It is a long-standing rule of appellate procedure that we need not address errors which are assigned and briefed but which were not raised in the trial court. *Republic Steel Corp. v. Cuyahoga Cty. Bd. of Revision* (1963), 175 Ohio St. 179, 23 O.O.2d 462, 192 N.E.2d 47. Indeed, appellant could be found to have waived this issue when his counsel addressed the mother as Mrs. Lassiter both during his examination of her and in his closing argument. Because the matter of adoption is so important, however, we will not dismiss this assignment of error on the technical ground

that it is being improperly raised for the first time at the appellate level, but, instead, we find that as a matter of substance the assignment has no merit.

The record contains the report on the proposed adoption filed by the Clark County Department of Human Services on October 18, 1993. This report contains the clear statement that Mr. and Mrs. Lassiter were married on September 5, 1992, in Springfield, Ohio, and that this fact was verified by the department on October 13, 1993. We therefore overrule the second assignment of error.

## III

Appellant supports his first assignment of error, that the decision of the probate court was incorrect as a matter of law, with two separate arguments.

In the first of these arguments, Sullivan contends that his consent to the adoption was required because there was insufficient evidence in the record for the trial court to conclude that, under R.C. 3107.07(A), he had failed "to provide for the maintenance and support of [Michael] as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition."

In presenting this argument, Sullivan first directs our attention to the second paragraph of the syllabus of *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127, 585 N.E.2d 418, which holds that "[t]he one-year period of nonsupport prescribed by R.C. 3107.07(A) which obviates the requirement to obtain parental consent to an adoption pursuant to R.C. 3107.06 commences on the date that parentage has been judicially established." Next, Sullivan claims that his paternity of Michael was not judicially established until he and Mrs. Lassiter jointly admitted that fact at the hearing held on the adoption petition. Sullivan concludes by asserting that since his paternity was not judicially established until the date of the hearing, the trial court was presented with no evidence from which it could conclude that he had failed to provide for the support of Michael for one year immediately preceding the filing of Mr. Lassiter's adoption petition.

Sullivan does acknowledge that the trial court found that "[he and Mrs. Lassiter] were unmarried but legitimation was granted in this Court." However, Sullivan complains that the Lassiters never introduced into the record a certified copy of the judgment entry concerning the legitimation proceedings. He, therefore, insists that the holding in *Sunderhaus* is dispositive and that reversal is required.

■■ Initially, we should point out that a review of the records of the Clark County Probate Court reveals that Sullivan did, in fact, file an application to establish the legitimacy of Michael, pursuant to the former version of R.C.

2105.18, on November 17, 1987, in case No. 78233. Sullivan's request for legitimation was granted in a judgment entry filed that same day by the very judge who later presided over the proceedings which are currently before us. This court can take judicial notice of a court's finding in another case. *Kirshner v. Shinaberry* (1989), 64 Ohio App.3d 536, 582 N.E.2d 22.

The following exchange, moreover, occurred between the Lassiters' attorney and Mrs. Lassiter at the hearing on the adoption petition:

"Q. [Lassiters' counsel] Were there any court proceedings made to legitimize the birth of the child?

"A. [Mrs. Lassiter] Yes, we went to probate court.

"Q. And do you recall when that was?

"A. I believe it was, if it wasn't in the [*sic*] '87, it was the beginning of '88 at the time. I was on ADC and that's a procedure whenever you're receiving any type of state money where you can verify the child, the father with the child.

"Q. And Mr. Sullivan took part in that procedure?

"A. Exactly."

As stated previously, the trial judge noted in his April 21, 1994 decision and entry, that Sullivan and Mrs. Lassiter were unmarried when Michael was born but that legitimation had been granted "in this Court." It is not clear whether the trial judge based this finding on Mrs. Lassiter's testimony quoted above, or whether he was taking judicial notice of the November 1987 proceedings. In either event, we conclude that the trial court committed no error in finding that Michael had been legitimatized via a court proceeding by the beginning of 1988. To remand this case for the sole purpose of requiring the Lassiters to submit a certified copy of Sullivan's application to establish legitimation and the trial court's November 17, 1987 judgment entry granting the legitimation would simply be a senseless waste of judicial resources.

■ The remaining question before us, then, is whether a legitimation granted pursuant to the version of R.C. 2105.18 in effect at the time of Michael's legitimation is sufficient to trigger the one-year period of nonsupport set forth in R.C. 3107.07(A) which obviates the need to obtain parental consent to an adoption pursuant to R.C. 3107.06. For the reasons which we shall presently state, we find that it is.

The procedures for adoption in this state are prescribed in R.C. Chapter 3107. R.C. 3107.06 states, in relevant part:

"Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

" * * *

"(B) The father of the minor, if the minor was conceived or born while the father was married to the mother, if the minor is his child by adoption, or if the minor has been established to be his child by a court proceeding[.]"

R.C. 3107.07 states, in relevant part:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that *the parent has failed without justifiable cause* to communicate with the minor or *to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding* * * * *the filing of the adoption petition.*" (Emphasis added.)

In *Sunderhaus,* the court discussed "the circumstances under which a probate court may dispense with the requirement that the parent of a child consent to her adoption by another." *Sunderhaus, supra,* 63 Ohio St.3d at 129, 585 N.E.2d at 419. The court noted that "[t]he ability to dispense with the consent requirement under R.C. 3107.07(A) is dependent upon two factors: (1) the establishment of the parent-child relationship, and (2) the failure to satisfy the support obligation arising therefrom." *Id.* at 130, 585 N.E.2d at 420. The court also noted that "[p]arentage may be established through a judicial admission or default pursuant to R.C. 3111.08(B), or as the result of a contested action pursuant to R.C. 3111.12." *Id.* Additionally, the court stated that the duty of support arising from a paternity determination rendered pursuant to R.C. Chapter 3111, stems from R.C. 3111.13(C), which provides, in pertinent part:

"The judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support * * * or any other matter in the best interest of the child."

The court concluded by holding that:

"[A]n unmarried parent is subject to the support obligation to which R.C. 3107.07(A) refers only where a paternity determination has been rendered pursuant to R.C. 3111.08(B) or 3111.12. Accordingly, the one-year period of nonsupport prescribed by R.C. 3107.07(A) which obviates the requirement to obtain parental consent to an adoption pursuant to R.C. 3107.06 commences on the date that parentage has been judicially established." *Id.* at 132, 585 N.E.2d at 422, and at paragraphs one and two of the syllabus.

As the Lassiters point out, the *Sunderhaus* court was not confronted with the issue of whether the duty of support and the one-year period of nonsupport to which R.C. 3107.07(A) refers can be triggered where paternity is established pursuant to former R.C. 2105.18 instead of R.C. 3111.08(B) or 3111.12. We are convinced that they can be.

Former R.C. 2105.18 provided, in relevant part:

"The natural father of a child may file an application in the probate court of the county in which he resides, in the county in which the child resides, or the county in which the child was born, acknowledging that the child is his. If such an application is filed, upon consent of the mother, * * * the probate court, if satisfied that the applicant is the natural father, and that establishment of the relationship is for the best interest of the child, shall enter the finding of fact upon its journal. *Thereafter, the child is the child of the applicant, as though born to him in lawful wedlock."* (Emphasis added.) 139 Ohio Laws, Part I, 2170–2171.

It has been held that an order of legitimacy issued pursuant to R.C. 2105.18 "is a judicial determination of parentage or paternity" which "establishes a full parent-child relationship for all legal purposes." *In re Custody of Davis* (1987), 41 Ohio App.3d 81, 83, 534 N.E.2d 945, 947.[1] The Ohio Supreme Court has ruled that "[t]he doctrine of *res judicata* can be invoked to give conclusive effect to a determination of parentage contained in a dissolution decree or a legitimation order, thereby barring a subsequent paternity action brought pursuant to R.C. Chapter 3111." *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 512 N.E.2d 956, syllabus. Furthermore, once a child has been legitimatized pursuant to former R.C. 2105.18, it becomes the child of the applicant as if it were "born to him in lawful wedlock."

With these principles taken into account, we believe that former R.C. 2105.18 provides the natural father who has acknowledged his paternity of the child with all the rights and responsibilities he would have had if the child had been born to him in lawful wedlock. We also believe that one of the responsibilities imposed upon the natural father once legitimation has occurred is the duty to support the child of whom he has just acknowledged paternity.

█ It has long been held in this state that fathers have a common-law duty to support children born to them in wedlock. *In re Adoption of McDermitt* (1980), 63 Ohio St.2d 301, 305, 17 O.O.3d 195, 197, 408 N.E.2d 680, 683: "[A] judicial decree of support simply incorporates the common-law duty of support." *Id.*

---

1. In reaching this conclusion, the *Davis* court rejected, as we do, "the argument that an R.C. 2105.18 acknowledgement of paternity is valid only for purposes of descent and distribution." *Davis, supra.*

Consequently, once a child has been legitimized pursuant to former R.C. 2105.18, the natural father has the duty of providing support for that child since a full parent-child relationship has been established between the two, and the child is the child of the natural father as if it had been born in lawful wedlock.

Accordingly, we conclude that when a natural father has acknowledged his paternity of a child pursuant to former R.C. 2105.18 and the court has granted legitimation under that section, the natural father assumes the duty of supporting the child. Additionally, we conclude that when paternity has been established under former R.C. 2105.18, a parent becomes subject to the duty of support to which R.C. 3107.07(A) refers. Finally, we also conclude that the one-year period of support set forth in R.C. 3107.07(A) begins to run once parentage has been judicially established via former R.C. 2105.18.

The current version of R.C. 2105.18 makes it explicitly clear that "the man who signed the acknowledgment of paternity is the father of the child and assumes the parental duty of support." R.C. 2105.18(B). Nevertheless, it must be emphasized that this new language does not change or modify the law in this regard, but rather, merely clarifies it. See Ohio Legislative Service Commission, Summary of Enactments, 119th General Assembly, 1992, Part I (1993), 111 (Am.Sub. S.B. 10, which amended R.C. 2105.18, "clarifies that * * * a parent who signs and files an acknowledgment of paternity with the probate court * * * assumes the parental duty of support for that child"). As stated earlier, a legitimation granted pursuant to former R.C. 2105.18 establishes a full parent-child relationship for all legal purposes. Moreover, once a child is legitimized under former R.C. 2105.18, "the child is the child of the applicant, as though born to him in lawful wedlock." Under these circumstances the same common-law duty of support attaches to the father as if the child had actually been born in wedlock. In short, the current version of R.C. 2105.18 does not establish new law by imposing a duty of support upon fathers who acknowledge paternity of child; it simply sets forth prior law in explicit terms.

■ Applying these principles to the case *sub judice*, we find that when Sullivan acknowledged his paternity of Michael in November 1987, pursuant to former R.C. 2105.18, and the trial court granted legitimacy at that same time, Sullivan's paternity of Michael became judicially established, Sullivan assumed the duty of supporting Michael, and the one-year period of nonsupport prescribed by R.C. 3107.07(A) began to run. The record shows that Sullivan provided Mrs. Lassiter with no support for Michael after 1989, and the petition for adoption was filed in April 1993. Under these circumstances there was ample evidence for the trial court to conclude that, pursuant to R.C. 3107.07(A), Sullivan had failed to provide for the maintenance and support of Michael as required by law for a

period of at least one year immediately preceding the filing of the adoption petition.

The remaining issue left, which Sullivan addresses in his other major argument under his first assignment of error, is whether Sullivan's drug addiction provided him with a "justifiable cause" under R.C. 3107.07(A) for not providing Michael with support for at least one year immediately preceding the filing of the adoption petition.

▮▮▮▮ Sullivan points out, correctly, that the petitioner in an adoption proceeding must prove by clear and convincing evidence that the natural parent has not only failed to support the child for the statutory period, but that such failure was without justifiable cause. *Masa, supra.* Furthermore, the petitioner has the burden of proving that the natural parent's failure to provide support is not justified after the natural parent provides some evidence to justify the failure to provide support. *In re Adoption of Dues* (1990), 69 Ohio App.3d 498, 591 N.E.2d 257. Appellant argues that his drug addiction was involuntary, an illness, and a handicap preventing him from holding a job. There is no question that drug addiction and alcoholism are handicaps that do not justify a discharge from employment for that reason alone. *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478. But the *Hazlett* court, as the appellee has pointed out, limited its holding to employment situations and beyond that "the statute does not protect the chemically dependent individual." *Id.* at 282, 25 OBR at 334, 496 N.E.2d at 481. We adopt the following language from the appellee's brief as our own:

"Drug addiction does not relieve one of ones [*sic*] responsibility towards his family and society. A drug addict still must pay his rent, a drug addict still must pay his bills and a drug addict still must pay his taxes. Appellant apparently had funds sufficient to support his drug habit; therefore, he should have had funds sufficient to pay support. A drug addict still must abide by the rules and laws of society. To permit otherwise would be an unfortunate and improper interpretation of the 'handicap' section of Chapter 4112. Review of the case law reveals no cases holding that drug addiction is a justifiable cause for failure to support a parties [*sic*] minor child."

▮▮▮ The appellant puts great stress on the fact that the appellee rested his case after appellant had presented his drug addiction as a justifiable cause for failing to provide support to his child, and thus the appellee failed to meet his burden of proof by failing to offer any evidence in response to the argument of the appellant. A trial, however, is not a tennis match. The probate court has the duty of making its ruling based upon all the evidence presented to it, and such evidence can include testimony of the natural parent himself. *In re Adoption of*

*Lay* (1986), 25 Ohio St.3d 41, 42, 25 OBR 66, 67, 495 N.E.2d 9, 10–11. The evidence presented to the probate court included the facts that from the appellant's own testimony he had held four or five jobs since 1988, although none longer than six months, and that his drug usage during those years was intermittent. Furthermore, appellant testified that he hadn't had a drink or a drug since October 10, 1992 and that he has been employed as a security guard for approximately six months prior to the hearing.

 A probate court's determination regarding justifiable cause will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.; Masa, supra,* 23 Ohio St.3d at 166, 23 OBR at 332, 492 N.E.2d at 142–143; *McDermitt, supra,* 63 Ohio St.2d at 306, 17 O.O.3d at 197–198, 408 N.E.2d at 683–684; *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, paragraph four of the syllabus. The appellant's own father gave his opinion at the hearing that his son's drug problem "did not justify" his failure to support his grandchild. The finding of the probate court that Mr. Sullivan had at least some income from employment during the years in question but still did not pay any support is more than justified by the competent and credible evidence presented during the hearing, primarily from Mr. Sullivan himself. Since the probate court's judgment is supported by the evidence before it, we will not find it to be against the manifest weight of the evidence. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742. As the Supreme Court of Ohio stated, "we believe the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 367, 18 OBR 419, 424–425, 481 N.E.2d 613, 620.

The appellant's first assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.