OPINION
Defendant-appellant Rubin Szerlip appeals from the March 26, 2001, Entry of the Knox County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE
On June 8, 1995, appellee filed a Complaint for Divorce against appellant in the Knox County Court of Common Pleas. At the time the complaint was filed, the parties had four minor children. As memorialized in a Judgment Entry filed on January 29, 1997, the trial court appointed Patrick Hamilton as the Guardian Ad Litem.
Pursuant to a Journal Entry-Decree of Divorce filed on October 10, 1997, the trial court designated appellee the residential parent and legal custodian of the parties' four minor children and granted appellant companionship in accordance with the Local Rules. In addition, the trial court, in the decree, ordered appellant to pay appellee "the sum of $1,604.38, which represents ½ the uninsured medical expenses paid by the Wife for the minor children during the pendency of this matter within 30 days of the date this Entry is journalized". Appellant also was ordered to pay child support in the amount of $110.95 per child, per month, plus poundage.
On October 17, 2000, appellee filed two separate motions captioned "Motion for Enforcement of Sentence and Motion for Contempt". Appellee, in one of her motions, asked that appellant's previously suspended jail sentence for non-payment of child support be enforced[1] and that appellant again be held in contempt for failing to pay child support. In the other motion, appellee sought, in part, to have appellant held in contempt for failing to pay the above medical expenses set forth in the Divorce Decree for the parties' minor children.
Subsequently, a scheduling conference was held before the trial court on March 19, 2001. As memorialized in a Journal Entry filed on March 26, 2001, the trial court temporarily suspended appellant's parental rights "until further order of court" based on appellant's conviction in Mount Vernon Municipal Court Case No. 99CRB 00141 for menacing by stalking. The trial court, in its entry, also ordered that "monies owed under the agreed order of May 13, 1996 shall be paid to the Plaintiff" and denied numerous pending motions filed by appellant. In addition, the trial court's March 26, 2001, entry granted Attorney William Bringman's October 30, 2000, motion to withdraw as counsel for appellant and further ordered that a hearing on appellee's motion for imposition of sentence be scheduled for April 27, 2001.
It is from the trial court's March 26, 2001, entry that appellant now prosecutes his appeal, raising the following assignments of error:
 THE TRIAL COURT ACTED CONTRARY TO THE CODE OF JUDICIAL CONDUCT.
THE TRIAL COURT FAILED TO ACT IMPARTIALLY.
 THE TRIAL COURT BEHAVED IN A MANNER DEMEANING TO THE JUDICIARY.
 THE TRIAL COURT ERRED, ACTED CONTRARY TO LAW, AND ABUSED ITS DISCRETION WHEN IT ACCEPTED AN EX PARTE PARTIAL TRANSCRIPT OF A MUNICIPAL COURT PROCEEDING AND BASED ITS RULING ON THESE TRANSCRIPTS; WITHOUT APPELLANT BEING PROVIDED A COPY OF SAID TRANSCRIPTS.
 THE TRIAL COURT ERRED, ACTED CONTRARY TO LAW, AND ABUSED ITS DISCRETION WHEN IT SCHEDULE [SIC] A HEARING FOR IMPOSITION OF SENTENCE REGARDING A CONTEMPT ISSUE WITHOUT FIRST HOLDING A HEARING TO ALLOW EVIDENCE TO BE PRESENTED BY THE APPELLANT.
MISCONDUCT OF JUDGE.
 THE TRIAL COURT ERRED, ACTED CONTRARY TO LAW, AND ABUSED ITS DISCRETION WHEN IT HAS EX PARTE CONVERSATIONS WITH ANOTHER JUDGE PRESIDING OVER A SEPARATE CASE INVOLVING THE PARTIES; SPECIFICALLY, WHETHER OR NOT TO ALLOW PSYCHOLOGICAL EVALUATIONS OF THE PARTIES' MINOR CHILDREN AS REQUESTED BY A PSYCHOLOGIST; WHICH BOTH OF THE TRIAL COURTS SUBSEQUENTLY DENIED.
 THE TRIAL COURT ERRED IN NOT HOLDING A HEARING FOR THE WITHDRAW OF COUNSEL.
 THE TRIAL COURT ERRED IN ORDERING FUNDS RELEASED TO APPELLEE FROM A MAY 13, 1996 AGREED ORDER; THERE IS NO AGREED ORDER FOR MAY 13TH OCCURRING IN ANY YEAR. NOTHING CAN BE FOUND IN THE RECORD.
 I, II, III, VI
Appellant, in his first, second, third and sixth assignments of error argues that the trial court acted "contrary to the Code of Judicial Conduct", failed to act impartially, behaved in a "manner demeaning to the judiciary" and engaged in unethical misconduct. Appellant argues, in part, that the trial court exhibited its bias against him by, in its March 26, 2001 entry, denied "in one fell swoop" twelve of appellant's motions. Appellant further maintains that the trial judge acted in an unethical manner by, among other things, attempting to coerce appellant to drop his appeals and by encouraging non-lawyers to engage in the unauthorized practice of law.
"The Chief Justice of the Supreme Court of Ohio, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." Jones v. Billingham (1995), 105 Ohio App.3d 8,11, citing, Section 5(C), Article IV, Ohio Constitution, and Adkins v.Adkins (1988), 43 Ohio App.3d 95. R.C. 2701.03 provides the exclusive means by which a litigant can assert that a common pleas judge is biased or prejudiced. Id. Thus, an appellate court, lacks the authority to pass upon the disqualification of a common pleas court judge or to void the judgment of a trial court on that basis. State v. Ramos (1993),88 Ohio App.3d 394, 398. This Court, therefore, has no jurisdiction to reverse the trial court's decision on this basis.
As to appellant's contention that the trial judge violated the Code of Judicial Conduct, acted in a manner demeaning to the judiciary, and engaged in unethical misconduct, the instant appeal is not the proper venue for such complaints. As noted by this court in Szerlip v. Spencer
(March 14, 2002), Knox App. No. 01CA30 unreported, "any allegations of judicial misconduct are not cognizable on appeal, but is a matter properly within the jurisdiction of the Disciplinary Counsel."
Appellant's first, second, and third assignments of error are, therefore, overruled.
 IV
Appellant, in his fourth assignment of error, argues that the trial court erred in accepting an "ex parte partial transcript of a municipal court proceeding" and basing its ruling on the same when appellant was not provided with a copy of the transcript. As is stated above, the trial court, in its March 26, 2001, entry, ordered that appellant's parental rights be temporarily suspended based on appellant's conviction in Mount Vernon Municipal Court Case No. 99CRB 00141 for menacing by stalking. Such entry was entered after a March 19, 2001, scheduling conference at which appellant's then counsel was present. The trial court, in its March 26, 2001, entry, specifically stated as follows:
 The court takes Judicial Notice of the conviction of the Defendant in the Mount Vernon Municipal Court Case No. 99CRB 00141. The conviction is for Menacing by Stalking. The victim in that case is the Plaintiff, Carol Szerlip. The court was provided with a partial transcript of the Municipal Court proceedings. Based upon the foregoing, a review of the file, the best interest of the minor children and the law, the parental rights of the Defendant Rubin Szerlip are temporarily suspended. Rubin Szerlip shall have no contact with the minor children of the marriage nor shall he have any contact with the Plaintiff, Carol Szerlip until further order of the court.
"Ex parte communication" is defined as:
 "Ex parte. On one side only; by or for one party; done for, in behalf of, or on the application of, one party only.
 "A judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested."
Black's Law Dictionary (6 Ed. 1990) 576. Clearly, the transcript of the Municipal Court proceedings does not meet the definition of anex parte communication since, as is stated above, the transcript was considered by the trial court at a scheduling conference where both parties appeared by counsel.
Furthermore, a court may take judicial notice of a judgment rendered by another court within the state. See Kirshner v. Shinaberry (1989),64 Ohio App.3d 536, 539 and In re Adoption of Lassiter (1995),101 Ohio App.3d 367, 374. Thus, the trial court in this matter could take judicial notice of appellant's conviction in the Municipal Court case for menacing by stalking in determining to temporarily suspend appellant's parental rights.
Appellant, in his fourth assignment of error, also contends that he "never had the opportunity to view, reply, refute and otherwise defense his rights with his children because he was never provided with the transcripts" that the trial court reviewed. In essence, appellant challenges the trial court's right to issue an order temporarily suspending his parental rights.
As noted by the trial court in its March 26, 2001, entry, at the time of the March 19, 2001, scheduling conference, appellant had pending motions relating to the allocation of parental rights and responsibilities. Civ.R. 75 is applicable to post-decree matters[2]. Such rule states, in relevant part, as follows:
(I) Temporary restraining orders
 (1) Restraining order: exclusion. The provisions of Civ.R. 65(A) shall not apply in divorce, annulment, or legal separation actions.
 (2) Restraining order: grounds, procedure. When it is made to appear to the court by affidavit of a party sworn to absolutely that a party is about to dispose of or encumber property, or any part thereof of property, so as to defeat another party in obtaining an equitable division of marital property, a distributive award, or spousal or other support, or that a party to the action or a child of any party is about to suffer physical abuse, annoyance, or bodily injury by the other party, the court may allow a temporary restraining order, with or without bond, to prevent that action. A temporary restraining order may be issued without notice and shall remain in force during the pendency of the action unless the court or magistrate otherwise orders. (Emphasis added.)
Pursuant to such rule, the trial court was authorized to issue a temporary restraining order suspending appellant's parental rights without notice pending further hearing. The transcript in the case subjudice is not an affidavit, which the rule requires. But, based on the transcript's reliability as to the information therein, we find it to be sufficient to support the temporary restraining order.
Appellant's fourth assignment of error is, therefore, overruled.
 V
Appellant, in his fifth assignment of error, contends that the trial court erred when, in its March 26, 2001, entry, it scheduled a hearing on appellee's motion requesting imposition of sentence "without first holding a hearing to allow evidence to be presented by the Appellant, which would allow Appellant to defend himself against the charges." The trial court wrote: "The case is set for status conference, scheduling and hearing on the [appellee's] motion for imposition of sentence on Friday, April 27, 2001 at 9:30 A.M. in the Knox County courthouse."
Although both of appellee's motions are captioned "Motion for Enforcement of Sentence and Motion for Contempt", in only one of her October 17, 2000, motions does appellee actually move the trial court to enforce a previously imposed sentence. As is stated above, appellee, in such motion, moves the trial court for an order enforcing appellant's previously suspended jail sentence finding appellant in contempt for non-payment of child support. Previously, the trial court, pursuant to an entry filed on December 8, 1999, had found appellant in contempt for failing to pay child support, imposed a ten day jail sentence on appellant, and then suspended the same upon condition that appellant make each and every support payment. If, indeed, appellant was not given an opportunity to defend himself at such time, appellant should have filed an appeal from the trial court's December 8, 1999, entry.
Moreover, we find appellant's appeal on this issue premature. Since the trial court, in its March 26, 2001, entry, scheduled a hearing on appellee's Motion for Imposition of Sentence, appellant may have an opportunity to defend himself at such time. Until an entry is issued after such hearing, this Court is unable to determine whether or not the trial court permitted appellant to defend himself.
Appellant's fifth assignment of error is, therefore, overruled.
 VII
Appellant, in his seventh assignment of error, contends that the trial court erred in having an ex parte communication with another judge presiding over another case involving the same parties regarding whether or not to allow psychological evaluations of the parties' minor children. The trial court, in its March 26, 2000, entry, denied appellant's request for psychological evaluations. Appellant, in his brief, now alleges that he learned about such alleged "ex parte" communication from his former counsel.
Our review on appeal is limited to those materials in the record which were before the trial court. State v. Ishmail (1978), 54 Ohio St.2d 402. Upon our review of the record, we find nothing in the record indicating that the trial judge in this matter had any communication with another judge regarding psychological examination.
Appellant's seventh assignment of error is, therefore, overruled.
 VIII
Appellant, in his eighth assignment of error, maintains that the trial court erred in granting appellant's counsel's motion to withdraw without holding a hearing. On October 30, 2000, Attorney William Bringman filed a motion for leave to withdraw as counsel based on appellant's inability "to pay for any more attorney fees herein, as his ability to raise funds . . . has been eliminated". Attorney Bringman, in his motion, indicated that a copy of the same was serviced upon appellant by certified mail on October 30, 2000. Appellant did not file a response to the same. Such motion was granted by the trial court without hearing, as memorialized in the trial court's March 26, 2001, entry.
The general rule is that a trial court possesses discretion on whether to hold a hearing on counsel's motion to withdraw representation.Garfield Hts. v. Wolpert (1997), 122 Ohio App.3d 287, 291, citing Statev. Marinchek (1983), 9 Ohio App.3d 22, 24. While appellant, in his brief, argues that he was prejudiced by the withdrawal, the record in the case sub judice is devoid of any evidence of prejudice resulting from the trial court's failure to hold a hearing on the motion to withdraw. SeeGarfield Hts. v. Wolpert at 292. As is stated above, the trial court, in its March 26, 2001, entry, both granted Attorney Bringman's motion to withdraw as counsel and set a hearing on appellee's motion for imposition of sentence for April 27, 2001. Thus, after the March 26, 2001, entry was filed, appellant had a month in which to retain new counsel for the April 27, 2001, hearing.
Appellant's eighth assignment of error is overruled.
 IX
Appellant, in his ninth assignment of error, contends that the trial court erred when, in its March 26, 2001 entry, it ordered that the "monies owed under the agreed order of May 13, 1996 shall be paid" to appellee from the funds on deposit with the Special Master Commissioner. According to appellant, "there is no agreed order for May 13th occurring in any year".
Regardless of whether, in fact, there is a May 13, 1996, agreed entry, we find that the trial court lacked jurisdiction to order such monies to be paid.
Once an appeal is taken, the trial court is divested of jurisdiction except "over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issues like contempt * * *." State ex rel. Special Prosecutorsv. Judges, Court of Common Pleas (1978), 55 Ohio St.2d 94, Haller v.Borror (1995), 107 Ohio App.3d 432, 436.
Appellant, on December 19, 2000, filed a Notice of Appeal in Case No. 00CA000023, captioned Szerlip v. Szerlip. In such case, appellant assigned as error both the trial court's appointment of the Special Master Commissioner and, the trial court's "exercise of jurisdiction over funds owned by the parties". While such appeal was pending, the trial court issued the March 26, 2001, entry directing the Special Master Commissioner to pay the monies owed under the May 13, 1996, agreed order.
Since appellant's appeal in Case No. 00CA000023 was pending at the time that the March 26, 2001, entry was issued by the trial court, we concur with appellant that the trial court lacked jurisdiction to issue the same. Once appellant's appeal was filed in Case No. 00CA00023, the trial court was divested of jurisdiction to order the Special Master Commissioner to release any of the parties' funds.
Appellant's ninth assignment of error is, therefore, sustained and that portion of the trial court's March 26, 2001, order directing the special Master Commissioner to pay appellee the monies owed under the agreed order of May 13, 1996, is vacated.
Accordingly, the judgment of the Knox County Court of Common Pleas, Domestic Relations Division is affirmed in part and vacated in part.
By EDWARDS, J. FARMER, P.J. and BOGGINS, J. concur
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Knox County Court of Common Pleas is affirmed in part and vacated in part. Costs to appellant.
[1] As memorialized in an entry filed on December 8, 1999, the trial court found appellant in contempt for failing to pay child support, imposed a ten day jail sentence on appellant, and then suspended the same upon condition that appellant make "each and every support payment previously ordered by the Court."
[2] See Van Ho v. Van Ho (1984), 17 Ohio App.3d 108, syllabus, in which the court held that a domestic relations court may not, under Civ.R. 75(H) (now 75(I)) issue a post-decree temporary restraining order restraining a person who has not been made party to the action. Pursuant to Von Ho, a post-decree restraining order could be issued to a party to the action, such as appellant.