This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Ivi Barcelona Biggs and Brian Biggs, appeal the judgment of the Medina County Court of Common Pleas, Juvenile Division. We affirm in part and reverse in part.
 I.
On December 3, 1988, Jasmine Marie Barcelona (n.k.a. Jasmine Marie Balosky) was born to Ida Lillian Barcelona. Ida was unmarried at the time, and the father was listed as unknown on Jasmine's original birth certificate. After Jasmine's birth, Ida began dating Robert Francis Balosky, appellee, and, they were eventually married. Prior to the marriage and with the consent of Ida, Mr. Balosky acknowledged paternity of Jasmine in the Probate Court of Cuyahoga County. The probate court journalized the acknowledgment in May of 1994. Tragically, Ida died of breast cancer in November of 1998. During Ida's illness, Mr. Balosky and Jasmine resided with Ida's relatives and continued to do so after Ida's death. In August of 1999, however, Mr. Balosky and Jasmine left that residence and began residing with Mr. Balosky's mother in Seville, Ohio.
On November 3, 1999, Jasmine's maternal aunt, Ivi Barcelona Biggs, and uncle by marriage, Brian Biggs, filed a petition for a determination of custody, pursuant to R.C. 2151.23(A)(2), and a complaint for visitation and companionship rights, pursuant to R.C. 3109.11. A custody hearing before a magistrate was held commencing on October 23, 2000 and concluding, after an extended recess, on May 2, 2001. During the hearing, Mr. Balosky admitted that he was not the biological father of Jasmine. Additionally, Mr. Balosky testified that he met Ida in 1991, over two years after Jasmine's birth, thereby implicitly admitting that he was aware that he was not the biological father when he acknowledged paternity of Jasmine before the probate court.
In a decision rendered on May 7, 2001, the magistrate found that Mr. Balosky was the "legal father" of Jasmine due to the acknowledgment of paternity and, therefore, applied the standard for determining custody between a parent and a nonparent, as set forth in In re Perales (1977),52 Ohio St.2d 89[1] and its progeny. Applying this standard, the magistrate concluded that the Biggses had not shown in their case-in-chief that Mr. Balosky was an unsuitable parent and, consequently, dismissed the Biggses' petition for custody pursuant to Civ.R. 41(B)(2). Additionally, the magistrate awarded the Biggses supervised visitation with Jasmine. The Biggses timely filed objections to the magistrate's decision, including an objection to the application of the Perales standard under the circumstances of the case. On October 12, 2001, the juvenile court overruled the Biggses' objections and adopted the decision of the magistrate. This appeal followed.
 II.
The Biggses assert five assignments of error for review. We will discuss each in due course, consolidating the second, fourth, and fifth assignments of error to facilitate review.
 A. First Assignment of Error "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DESIGNATING THE DEFENDANT-APPELLEE, ROBERT BALOSKY, AS THE FATHER OF THE MINOR CHILD, JASMINE, WHEN IT WAS UNCONTROVERTED THAT HE WAS NOT THE BIOLOGICAL FATHER OF JASMINE AND HAD NOT ADOPTED JASMINE THROUGH ANY COURT PROCEEDING. AS A RESULT, THE TRIAL COURT ERRED IN ASSIGNING TO APPELLEE, ROBERT BALOSKY, THE STATUS OF PARENT IN APPLYING THE SUPREME COURT CASE OF IN RE PERALES (1977) 52 Ohio St.2d 89 AND OTHER CASES TO THE FACTS IN THE INSTANT CASE AND FURTHER ERRED IN FAILING TO CONSIDER THE DIRECTIVE OF JASMINE'S DECEASED MOTHER IN HER WILL CONCERNING THE CARE OF JASMINE."
In their first assignment of error, the Biggses contend, inter alia, that the juvenile court erred when it applied the standard for determining custody between a parent and a nonparent, as set forth inPerales. Specifically, they argue that, despite the fact that Mr. Balosky acknowledged paternity of Jasmine pursuant to R.C. 2105.18, the juvenile court erred in designating him the parent of Jasmine for the purpose of determining custody pursuant to R.C. 2151.23(A)(2) because Mr. Balosky admitted during the hearing that he was not the biological father of Jasmine and implicitly admitted that he was aware of this fact when he acknowledged paternity. We agree.
Former R.C. 2105.18 set forth the procedure whereby the natural father of a child born out of wedlock could legitimate that child via an acknowledgment of paternity in a county probate court. In re Lassiter
(1995), 101 Ohio App.3d 367, 376; see, also, R.C. 2105.18. Once a child had been legitimated pursuant to former R.C. 2105.18, "the child [wa]s the child of the man who signed the acknowledgment of paternity, as though born to him in lawful wedlock[.]" R.C. 2105.18. The Ohio Supreme Court has held that "[t]he doctrine of res judicata can be invoked to give conclusive effect to a determination of parentage contained in * * * a legitimation order, thereby barring a subsequent paternity action brought pursuant to R.C. Chapter 3111."[2] Gilbraith v. Hixson (1987),32 Ohio St.3d 127, syllabus. For res judicata to apply, however, the legitimation order must be obtained in the absence of fraud. See id. at 131.
In the present case, Mr. Balosky acknowledged paternity in the probate court pursuant to R.C. 2105.18, and the probate court journalized the acknowledgment. Based on this acknowledgment, Mr. Balosky argued and the juvenile court agreed that he was the father of Jasmine, and, therefore, the standard for determining custody between a parent and a nonparent as set forth in Perales should apply. Mr. Balosky, however, admitted during the custody hearing that he was not the biological father of Jasmine and had not formally adopted her. Through his testimony, he also implicitly admitted that he was aware of the fact that he was not Jasmine's biological father when he acknowledged paternity pursuant to R.C. 2105.18.
As previously discussed, former R.C. 2105.18 provides a method whereby the natural father of a child born out of wedlock could legitimate that child. See In re Lassiter, 101 Ohio App.3d at 376. It does not, however, establish a procedure for an adoption of a child. Chatman v. Chatman
(1977), 54 Ohio App.2d 6, 7-8. Clearly, Mr. Balosky misused the procedures of former R.C. 2105.18 in order to be legally recognized as Jasmine's father, thereby either intentionally or unintentionally circumventing well-established adoption procedures. See id. Accordingly, we are compelled to conclude that, under the exceptionally limited circumstances of this case, it was error to designate Mr. Balosky as Jasmine's parent for the purpose of applying the Perales standard in determining custody between Mr. Balosky and the Biggses, pursuant to R.C. 2151.23(A)(2). Appellants' first assignment of error is sustained.[3]
 B. Third Assignment of Error "THE TRIAL COURT ERRED IN FAILING TO REQUIRE DEFENDANT TO COOPERATE WITH CORNERSTONE COMPREHENSIVE PSYCHOLOGICAL ASSOCIATES IN THEIR CUSTODY EVALUATION AND FURTHER ERRED IN FAILING TO MAKE A RULING ON PLAINTIFFS' MOTION IN CONTEMPT FILED ON SEPTEMBER 20, 2000 CONCERNING APPELLEE, ROBERT BALOSKY'S, FAILURE TO COMPLY WITH THE COURT'S ORDER OF FEBRUARY 16, 2000 ORDERING CORNERSTONE TO COMPLETE A CUSTODY EVALUATION AND ORDERING THE PARTIES TO COOPERATE."
In their third assignment of error, the Biggses set forth two arguments focusing on Mr. Balosky's alleged lack of cooperation with the Cornerstone Comprehensive Psychological Services' family custody evaluation. First, the Biggses aver that the juvenile court erred by failing to order, sua sponte, Mr. Balosky to cooperate with certain directives of the evaluators conducting the family custody evaluation. We find that this argument has been rendered moot by this court's disposition of the first assignment of error. See App.R. 12(A)(1)(c). Consequently, we decline to address it.
Second, the Biggses assert that the juvenile court erred when it dismissed their September 20, 2000 motion for contempt. The motion for contempt was based upon Mr. Balosky's alleged noncompliance with the February 16, 2000 order, which required the parties to "comply with all directives of Cornerstone Comprehensive Psychological Services to insure that a family custody evaluation [could] be completed." The juvenile court dismissed the contempt motion without prejudice, holding that the Biggses' had failed to comply with specific procedural requirements for commencing a contempt proceeding. As the motion was dismissed without prejudice, the Biggses have not suffered any prejudice as a result of the juvenile court's ruling. On remand, the Biggses can refile their contempt motion. Accordingly, the Biggses' third assignment of error is overruled in part.
 C. Second Assignment of Error "THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN DISMISSING PLAINTIFF APPELLANTS' PETITION FOR DETERMINATION OF CUSTODY PURSUANT TO SECTION 2151.23(A)(2) PER CIVIL RULE 41(B)(2) WITH PREJUDICE AND BY FAILING TO AWARD CUSTODY OF JASMINE TO APPELLANTS."
 Fourth Assignment of Error "THE TRIAL COURT ERRED IN FAILING TO PROPERLY CONSIDER THAT JASMINE, AGE 12, IS A FILIPINO AMERICAN WHOSE ASIAN BACKGROUND REQUIRED SPECIFIC PARENTING SKILLS THAT ROBERT BALOSKY DOES NOT POSSESS AND ERRED IN FAILING TO GRANT TO PLAINTIFF-APPELLANTS CUSTODY OF JASMINE."
 Fifth Assignment of Error "THE TRIAL COURT ERRED IN FAILING TO GRANT TO IVI AND BRIAN BIGGS APPROPRIATE VISITATION/COMPANIONSHIP WITH THE MINOR CHILD, JASMINE, IN LIGHT OF JASMINE'S SIGNIFICANT, LONG TERM AND CONTINUOUS RELATIONSHIP WITH IVI AND BRIAN BIGGS AND THE ENTIRE MATERNAL SIDE OF HER FAMILY."
Appellants' second, fourth, and fifth assignments of error have been rendered moot by this court's disposition of the first assignment of error; therefore, we decline to address them. See App.R. 12(A)(1)(c).
 III.
Appellants' first assignment of error is sustained. Their third assignment of error is overruled in part and rendered moot in part. The second, fourth, and fifth assignments of error have been rendered moot. See App.R. 12(A)(1)(c). The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this decision.
BAIRD, P.J., WHITMORE, J. CONCUR.
[1] In In re Perales (1977), 52 Ohio St.2d 89, syllabus, the Ohio Supreme Court held that "[i]n an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child."
[2] We note that the case sub judice is not a parentage action brought pursuant to R.C. Chapter 3111 but, rather, a custody proceeding under R.C. 2151.23(A)(2).
[3] This court does not express any opinion as to whether the Biggses or Mr. Balosky should be awarded custody upon remand.