OPINION
{¶ 1} Mary Kay Trower appeals from an order of the Montgomery County Court of Common Pleas, Probate Division, determining that her consent is not necessary to the adoption of her minor child, C.E.T., by the child's paternal grandmother, Sandra Damron, who has legal custody of the child. Trower contends that the trial court erred by finding that she had failed to support her child for one year preceding the filing of the petition for adoption, and that the trial court erred in finding that any failure on her part to provide support was not justifiable. We conclude that there is evidence in the record from which the trial court could find that Trower failed to provide financial support that she was obligated to provide, by law, for her child. With respect to the trial court's finding that this failure was without justifiable cause, we conclude that the trial court erred by relying upon facts and circumstances that occurred after the applicable time period — the one year preceding the filing of the petition for adoption. Accordingly, the order of the trial court determining that Trower's consent to the adoption is not necessary, is Reversed, and this cause is Remanded for further proceedings.
 I {¶ 2} The child which with this appeal is concerned, a girl, was born August 4, 1996. The child's father has not been part of the child's life, and his interests are not involved in this appeal.
 {¶ 3} Immediately following the birth of the child, Trower, the child's mother, went with the child to live with Damron, the child's paternal grandmother, for a while. Trower then entered into a drug rehabilitation program.
 {¶ 4} From August, 1996, until January, 1999, the child resided with Damron. From January, 1999, to September, 1999, the child resided with Trower. From September, 1999, to May, 2000, the child resided with Damron. From May, 2000, to July, 2000, the child resided with Trower. Since July, 2000, the child has lived with Damron, pursuant to an order of the Montgomery County Common Pleas Court, Juvenile Division, granting Damron legal custody. In the order of custody, the trial court ordered Trower to report to the "seek work opportunities program court liaison" at the Job Center in Dayton, for assessment and training. Neither in the custody order, nor in any subsequent order in our record, did the juvenile court either impose a specific child support obligation or excuse Trower from any obligation to support her child.
 {¶ 5} Trower had a pending appeal from a denial of her application for disability benefits under the federal Social Security Income program. She was ultimately successful, obtaining in June, 2002, an award of about $23,000, of which she actually received "a little over $6,000." Trower did not advise Damron of her receipt of this money. Nor did Trower use any portion of the monies she received for the support of her child, instead using it to pay bills and to buy illegal drugs.
 {¶ 6} In January, 2002, Damron filed an application to adopt the child. Trower objected to the application. Damron contended that Trower had failed, without justifiable cause, to provide for the maintenance and support of the child "as required by law or judicial decree" for a period of at least one year immediately preceding the filing of the adoption petition, thereby vitiating the requirement of parental consent, pursuant to R.C. 3107.06.
 {¶ 7} This matter was heard by the probate court on August 26, 2002, Trower and Damron participating in the hearing, with their attorneys. Following the hearing, the trial court entered an order finding: "that the natural mother, Mary Katherine Trower, and the natural father, Donald Lee Faulkner, have failed without justifiable cause to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding placement for the purpose of adoption, even after Mary Katherine Trower had an opportunity to provide funds after receiving a sum of money from a settlement." In its order, the trial court overruled Trower's objections to the adoption. From this order, Trower appeals.
 II {¶ 8} Trower's sole assignment of error is as follows:
 {¶ 9} "The Trial Court Erred To The Prejudice Of Appellant In Finding That Appellant's Consent Was Not Required To Place Her Child With Appellee For The Purpose Of Adoption."
 {¶ 10} Trower first argues that she had no legal duty to support the child, because the child was the subject of a custody order, but there was no order for Trower to pay child support. In In re the Adoptionof Stephens (December 21, 2001), Montgomery App. No. 18956, we agreed with a mother that her failure to have provided support for the child for the one year preceding the filing of the adoption petition did not vitiate the requirement of her consent, because she had been expressly excused from the obligation to pay support. The juvenile court in that case had specifically directed that "there shall be no child support order at this time," thereby adjudicating the mother's support obligation in the mother's favor.
 {¶ 11} In our view, the case before us is distinguishable. The juvenile court in this case has never adjudicated the issue of Trower's obligation to support her child, which, in the absence of an adjudication, is controlled by the general statutory obligation of a parent to provide for the support of the child, found in R.C. 3103.03. That obligation survives an order of legal custody to another. In reAdoption of Kuhlmann (1994), 99 Ohio App.3d 44, 50; R.C. 2151.011(B)(45).
 {¶ 12} We have also found that a natural parent is not obligated to provide support where the person having custody of the child is advised of the parent's financial condition, and expresses no interest in receiving financial assistance. In re Adoption of Hadley (May 6, 1991), Greene App. No. 90-CA-117. In the case before us, Damron did not express a lack of interest in receiving financial assistance for the support of the child. To the contrary, she testified that she approached the Support Enforcement Agency with a view to obtaining an order requiring Trower and the child's father to pay support.
 {¶ 13} In short, we conclude that the trial court correctly determined that Trower was never relieved of her statutory obligation to provide for the support of her child.
 {¶ 14} Trower next contends that the trial court erred in determining that her failure to provide support for her child was without justifiable cause.
 {¶ 15} In her application for placement, which was filed January 24, 2002, Damron alleged that Trower had failed without justifiable cause to provide for the maintenance and support of the child as required by law or judicial decree for a period of at least one year immediately preceding the filing of the application for placement, or, in other words, during the year commencing January 24, 2001, and ending January 23, 2002. In her brief, Damron asserts that the decision of the federal court in Trower v. Commissioner of Social Security (March 18, 2002), S.D. Ohio, Western Division, No. C-3-00-620, which was received in evidence at the hearing in probate court, "states that Ms. Trower's only impairment prior to September 30, 1997, was substance abuse." Damron argues that prior to September 30, 1997, therefore, Trower had no justifable cause, other than substance abuse, for not supporting the child. Damron cites In re Lassiter (1995), 101 Ohio App.3d 367, for the proposition that drug addiction does not relieve a parent of the obligation to provide support for a child. However, events preceding September 30, 1997, are well outside the relative time period, which is between January 24, 2001, and January 23, 2002.
 {¶ 16} Damron argues in her brief that, "without collaterally attacking the [SSI] decision," it was predicated on the assumption that Trower's drug abuse disorder was in remission, but there was some evidence that Trower had experienced relapses. In her brief, Damron concludes: "thus, the SSI decision alone is a questionable basis for concluding that Ms. Trower was justified in failing to support [her child]."
 {¶ 17} The evidence in this record on the issue of Trower's ability to provide financially for her child during the year preceding the filing of the adoption petition is sparse. The trial court appears, both from comments made during the course of the hearing, and from its order, to have been impressed by the fact that Trower failed to make any provision for the support of her child from her net receipt of a little over $6,000 on her SSI disability claim. This is presumably what the trial court refers to in its decision when it notes that Trower had failed without justifiable cause to provide for the maintenance and support of the minor, "even after . . . Trower had an opportunity to provide funds after receiving a sum of money from a settlement."
 {¶ 18} At the hearing, the trial court personally interrogated Trower, during her testimony, and elicited that she received "a little over $6,000," in the middle of June, 2002, and that none of this money went to her daughter. The following colloquy ensued:
 {¶ 19} "THE WITNESS: I was waiting till [sic] I went to Court, the SEA to decide. I wasn't going to hand over cash without having a record that I've given her something.
 {¶ 20} "THE COURT: Like a check would do it, wouldn't it?
 {¶ 21} "THE WITNESS: I didn't know if I had to —
 {¶ 22} "MR. PENICK [representing Trower]: Judge, maybe I can shed some light on this question for you. Mary Kay has a pending Juvenile Court case in Greene County for another child. There's an SEA order for child support that they are filing a motion to find her in contempt on. That was pending, that we've had one hearing on but no decision as of yet. The same question arose in —
 {¶ 23} "THE COURT: See, my point is, if she wanted to wait, a child can't wait to eat. A child can't wait to get clothes. A child can't wait for all that stuff, so we don't wait. We get money. We do something about it. This is kind of indicative of no payment to me. That's the way I perceive all this stuff. Okay. What's next?"
 {¶ 24} It appears from the record that the trial court attached crucial significance to Trower's having failed to apply any part of her net receipt of SSI disability benefits for the support of her child.
 {¶ 25} Like the trial court, and as Trower's own counsel concedes in her brief, we find Trower's failure to use any portion of her lump sum SSI payment for support of her child "morally upsetting." However, her receipt of that money, and her failure to use any of it for the support of her child, was after the relevant time period. She received the money in the middle of June, 2002, and the relevant time period ran from January 24, 2001 until January 23, 2002. Any unjustifiable failure on Trower's part to have provided support for her child after the relevant time period cannot be used to establish that her failure to have provided support for her child during that time period was without justifiable cause. We conclude that the trial court erred when it based its finding — that Trower's failure to have provided for the support of her child was without justifiable cause — upon the fact that Trower failed to use any part of the SSI proceeds for the support of her child. To this extent, Trower's sole assignment of error is sustained.
 III {¶ 26} Trower's sole assignment of error is sustained, in part. The trial court committed legal error when it based its finding that Trower's failure to provide support was without justifiable cause, upon circumstances arising after the year preceding the application for placement for adoption. It is not clear that the trial court would have reached the same conclusion without its improper consideration of this evidence. Therefore, we cannot find that the error is harmless. The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.
BROGAN and GRADY, JJ., concur.